858 A.2d 484

**Oscar Louis DEVILLE**

v.

**STATE of Maryland.**

**No. 132 Sept. Term 2003.**

Court of Appeals of Maryland.

Sept. 23, 2004.

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

RAKER, Judge.

In this case, we must decide whether home detention[1] qualifies as "confinement in a correctional institution" under Maryland's enhanced penalty statute directed at habitual criminal drug offenders. Maryland Code (1957, 1996 Repl. Vol., 2001 Supp.), Article 27, § 286(d)[2] of the Controlled Dangerous Substances law, provides that a defendant who "has been convicted twice" of similar offenses under § 286(b)(1) or (b)(2) and has served a "term of confinement of at least 180 days in a correctional institution" is subject to a prison term of no less than twenty five years. We shall hold that a period of home detention does not meet the statutory requirement of confinement in a correctional institution and therefore, the sentence prescribed by § 286(d) may not be imposed where the requisite term of confinement was spent in home detention.

I.

On January 22, 2002, Prince George's County police executed search and seizure warrants on the vehicle of Oscar Louis Deville and Apartment 303 at 6449 Hilmar Drive, in Forestville, Deville's purported residence. In his bedroom, police found crack cocaine and related drug paraphernalia. Deville was subsequently convicted of possession of cocaine with

---

1. Home detention is a penal sanction most accurately characterized as a form of punishment less severe than retributive incarceration, but more serious than reformative probation. *See Bailey v. State*, 355 Md. 287, 295-96, 734 A.2d 684, 688 (1999) (citations omitted). Such programs, along with many other similar intermediate sanctions, have served as a response to prison overcrowding both in Maryland and nationwide. *See id.* at 295, 734 A.2d at 688. Home detention generally involves confinement of an inmate in his or her home, with supervision through various electronic and telephonic means. *See* 75 Op. Att'y Gen. 373, 374 (1990). These monitoring devices include, but are not limited to, electronic anklets or bracelets, TV monitors in the place of confinement, home and office visits, and drug and alcohol testing.

2. Effective October 1, 2002, § 286 was recodified, without substantive change, as Md.Code (2002), § 5-608 of the Criminal Law Article. Deville was charged prior to this recodification and we shall refer to the prior codification throughout this opinion.

intent to distribute. The State sought application of the mandatory sentencing provisions of Md. Code (1957, 1996 Repl. Vol., 2001 Supp.), Art. 27 § 286(d).[3]

Two prior convictions served as the State's basis for seeking enhanced sentencing. The first occurred in 1990, when Deville pled guilty to possession of cocaine with intent to distribute. For this offense he was sentenced to incarceration for five years, all of which was suspended in favor of a thirty-six-month term of supervised probation. The second conviction occurred on February 18, 1999, when Deville was sentenced for conspiracy to distribute cocaine. He was sentenced to ten years incarceration, all suspended except for eighteen months "house arrest thru AADC [Anne Arundel Detention Center] to begin on 2/22/1999," with five years probation. Deville served his sentence under the County house arrest program, where he received day-for-day credit; he fully served nine months of this sentence in home detention and was subsequently released.

The State contended that house arrest or home detention was equivalent under the statute to time served in a correctional institution, and that Deville had therefore satisfied the required 180 days confinement under § 286(d). The trial judge agreed and sentenced Deville to imprisonment for 25 years without the possibility of parole. Deville noted a timely appeal to the Court of Special Appeals, and that Court affirmed, based largely on this Court's holding in *Dedo v. State*, 343 Md. 2, 680 A.2d 464 (1996).

We granted Deville's petition for writ of certiorari to consider whether time spent in home detention can fulfill the 180 days confinement in a correctional institution as required under § 286(d). We must determine whether home detention is the equivalent of confinement in a correctional facility under Maryland's enhanced penalty statute for recidivist drug offenders.

---

**3.** Unless otherwise indicated, all following statutory citations are to Md. Code (1957, 1996 Repl. Vol., 2001 Supp.), Art. 27.

## II.

As we have so often stated, the chief objective of statutory construction is to discover and effectuate the actual intent of the legislature in enacting the statute. *See Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). We begin with the plain language of the statute, and where the language of the statute is ambiguous, our task is to resolve that ambiguity, in light of the legislative intent, using all the resources and tools of statutory construction at our disposal. *See id.* Ordinary and popular understanding of the English language dictates interpretation of terminology within legislation. *See Gargliano v. State*, 334 Md. 428, 435, 639 A.2d 675, 678 (1994).

Where the language of a statute is ambiguous or unclear, we examine legislative history, prior case law, and statutory purpose. *See Melgar v. State*, 355 Md. 339, 347, 734 A.2d 712, 716 (1999). A statute is ambiguous when there are two or more reasonable alternative interpretations of the statute. *See Price*, 378 Md. at 387, 835 A.2d at 1226. Ambiguous or equivocal statutory language requires us to consider not only the ordinary meaning of words, but also to interpret how that language relates to the overall meaning, setting, and purpose of an act. *See Gargliano*, 334 Md. at 436, 639 A.2d at 678. Therefore, when interpreting unclear language within a statute, we consider both the particular and broad objectives of the legislation, in addition to the overall purpose of the statutory scheme. *See id.* at 436, 639 A.2d at 678–79. In other words, we do not view the plain language in isolation, but analyze the entire statutory scheme as a whole. *See Outmezguine v. State*, 335 Md. 20, 41, 641 A.2d 870, 880–81 (1994).

Enhanced penalty statutes are highly penal statutes and must be construed strictly in order to prevent punishment not contemplated by the Legislature. *See Melgar*, 355 Md. at 347–48, 734 A.2d at 716–17; *Gargliano*, 334 Md. at 437, 639 A.2d at 679; *Dickerson v. State*, 324 Md. 163, 172, 596 A.2d 648, 652 (1991); *Jones v. State*, 324 Md. 32, 38,

595 A.2d 463, 466 (1991). When there is doubt as to the Legislature's intent regarding the application of an enhanced penalty, the rule of lenity requires that any ambiguity within criminal statutes be interpreted in favor of the defendant. *See Melgar,* 355 Md. at 347, 734 A.2d at 717 (citations omitted). *See also Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493, 497 (1971). We reiterated the rule in *Melgar* as follows:

"[A]n enhanced penalty statute, is highly penal and must be strictly construed so that the defendant is only subject to punishment contemplated by the statute. When doubt exists regarding the punishment imposed by a statute, the rule of lenity instructs that a court 'not interpret a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended.' "

355 Md. at 347, 734 A.2d at 716–17 (citations omitted).

Applying these principles, we conclude that home detention cannot satisfy the predicate 180–day term of confinement in a correctional institution required by § 286(d). Rather, we hold that this requisite period of incarceration must be spent within a penal institution such as a jail, detention center or prison.[4]

## III.

Section 286, the statute here at issue, provides in relevant part:

"(d)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years and subject to a fine not exceeding $100,000 if the person previously:

---

4. By way of example, we do not mean to exclude necessarily a privately run penal institution. As it is not an issue in this case, we do not address the matter.

(i) Has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of this section or § 286A of this article; and

(ii) Has been convicted twice, where the convictions do not arise from a single incident:

    1. Under subsection (b)(1) or subsection (b)(2) of this section;

    2. Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section;

    3. Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State; or

    4. Of any combination of these offenses."

As we explained in *Melgar*, this mandatory penalty can be broken into three primary factors. First, the defendant must be convicted of either violating or conspiring to violate § 286(b)(1) or (b)(2). *See Melgar*, 355 Md. at 344, 734 A.2d at 714–15. Second, the defendant must have two prior § 286(b)(1) or (b)(2) convictions arising from separate incidents. *See id.* at 344, 734 A.2d at 715. Third, the defendant must have served a term of confinement of at least 180 days in a correctional institute as a result of a previous § 286 or § 286A conviction. *See id.* Petitioner challenges neither the first nor the second prong of this test; therefore we concern ourselves only with the examination of the third factor.

Commonly known as "Three Strikes" laws, statutes that mandate enhanced penalties for certain repeat criminal offenders exist in different forms in every state and in the federal government. *See Gargliano*, 334 Md. at 434, 639 A.2d at 677. Such statutes have a long history in the United States,[5] but it

---

5. Laws mandating enhanced sentencing for habitual offenders have existed in the United States since the late 1700's, and in England since the 16th Century. *See* Erik G. Luna, *Foreward: Three Strikes In a Nutshell*, 20 T. Jefferson L. Rev. 1, 1 (1998).

was during the 1990s that they became particularly popular throughout the country. *See* Michael Vitiello, *Three Strikes:* *Can We Return to Rationality?*, 87 J. Crim. L. & Criminology 395, 400 (1997). Three strikes laws differ in a number of significant ways including, but not limited to, the number of requisite prior felonies, the nature of predicate prior and current offenses, the age of the past offense, and the length of the term of the prior sentence. *Id.* at 400–01, 639 A.2d 675. These requirements both limit and broaden the extent of recidivist mandatory sentencing.

Provisions requiring prior incarceration, as opposed to the predicate felony-conviction requirements, serve to limit the breadth of qualifiers under recidivist statutes. We have found a limited number of state habitual offender laws with this requirement; but where such limitations exist, they restrict the number of people that satisfy the definition of a recidivist offender. *See, e.g.,* Mass. Gen. Laws ch. 279, § 25 (2002); Neb.Rev.Stat. § 29–2221(1) (1995). Several states, including California, specifically require no prior incarceration for a felony conviction to count as a strike. *See* Cal.Penal Code § 667(a)(2) (West 2004) (providing that "[t]here is no requirement of prior incarceration or commitment for this subdivision to apply"). *See also* Wis. Stat. § 939.62(2) (2003 Supp.) (providing that "[i]t is immaterial that sentence was stayed, withheld or suspended, or that the actor was pardoned, unless such pardon was granted on the ground of innocence"). California's Three Strikes law is considered by many as the most draconian of all habitual offender statutes, and it is clear that its legislation was meant to be as rigid and broad-sweeping as possible. *See* Vitiello, *supra,* at 396–97. By excluding requisite prior incarceration explicitly, the California legislature in effect emphasized the limiting consequence such a provision has on habitual offender statutes.

Maryland first codified and required enhanced penalties for repeat criminal drug offenders in 1982, with the enactment of § 286(b)(1), (b)(2), and (b)(3). Although this legislation was limited to two-time offenders, it was the General Assembly's initial attempt to respond to a disproportionately small num-

ber of offenders who committed a great number of Maryland's drug-related crimes. *See Gargliano,* 334 Md. at 439, 639 A.2d at 680. In 1988, § 286 was amended to provide greater penalties for an individual's third and fourth criminal drug convictions. With the addition of § 286(d) and (e), and the recodification of § 286(b)(1) and (b)(2) as § 286(c), this legislation created a graduated mandatory penal system for repeat offenders. *See id.* at 440, 639 A.2d at 680. Subsection (d) specifically provided mandatory penalties for three-time offenders, and within this provision, § 286 required prior "confinement . . . in a correctional institution" for the first time.

The State bases its argument on three main points. First, the State maintains that the ordinary and popular understanding of "confinement . . . in a correctional institution" must include home detention. Second, the State contends that while the legislative history of § 286(d) fails to explain the meaning of "confinement . . . in a correctional institution," the Legislature's intent to construe drug laws liberally,[6] combined with the general goal of criminal drug laws to "turn the screw of the criminal machinery . . . tighter and tighter," *Cunningham v. State,* 318 Md. 182, 189, 567 A.2d 126, 129 (1989) (citations omitted), are together sufficient to prove that home detention was meant to be included within the phrase. Third, the State relies on our opinion in *Dedo* to determine that house arrest and home detention qualify as "confinement . . . in a correctional institution," for the purposes of § 286(d).

Petitioner relies largely on the same points of contention as the State, however, he uniformly comes to different conclusions. First, petitioner claims that "confinement . . . in a correctional institution" cannot include home detention based on the ordinary and popular understanding of the phrase.

---

**6.** Section 276(b), which applies to the entire Maryland subheading entitled Health—Controlled Dangerous Substances law, states:

*Construction of provisions of subheading*—The provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose as stated hereinabove.

This statute is now codified in Md.Code (2002), § 5–102 of the Criminal Law Article.

Second, he argues that despite scarce legislative history regarding § 286(d), the history of similar legislation, in addition to the need for strict construction of highly penal statutes, dictates that home detention cannot be included within the term "confinement . . . in a correctional institution." Third, petitioner states that *Dedo's* interpretation of home detention cannot apply to § 286, because that case dealt with a different statute.

We begin with the plain language of § 286(d). The phrase "confinement . . . in a correctional institution" has not been defined by the General Assembly. The State contends that home detention qualifies as "confinement . . . in a correctional institution" under § 286(d) because "confinement" means the inability to leave a place, and while under house arrest a party is clearly confined. Petitioner argues that a house cannot be a "correctional institution," and therefore home detention cannot qualify as "confinement . . . in a correctional institution" under § 286(d).

Although there is some merit in both arguments, neither resolve the issue. While a person confined under home detention, or placed under house arrest, clearly is "confined," the level of confinement is not equal to that of a person incarcerated within a prison, jail, detention center, or the like. Additionally, although a home is not a correctional institution in a traditional sense, it does serve to detain a party under house arrest. Therefore, because a reading of the statutory language does not answer the question before us, we move beyond the plain language of § 286(d) to interpret the meaning of "confinement . . . in a correctional institution."

Our review of the legislative history of § 286 is not much help. The legislative history contains no discussion regarding the reason for, or definition of, the term "confinement . . . in a correctional institution." What is clear is that this language was an amendment to the original version of the bill, and that the legislation passed only subsequent to its inclusion. *See* 1988 Md. Laws, ch. 439 at 3230, Amendments to House Bill No. 606, 3/17/88.[7] Additionally, we know that the general

---

7. House Bill No. 606 originally read, in relevant part, as follows:

purpose of § 286 is to provide more stringent penalties to offenders that persist repeatedly in certain criminal drug activities. *See Gargliano,* 334 Md. at 442, 639 A.2d at 681. We cannot, however, determine whether the Legislature intended this Act to reach all individuals who commit multiple offenses or whether its purpose was to limit the statutory penalty to a narrower class of individuals who have not responded to prior punishment. *See id.* Regardless, it is clear that the legislative history of § 286 does not provide a satisfactory interpretation of "confinement ... in a correctional institution."

Although the legislative history of § 286 fails to provide an actual definition of "confinement ... in a correctional institution," the time period in which legislation passed offers assistance in this determination. As we have previously discussed, § 286 was not amended to include this language until 1988. The Legislature, however, did not enact home detention legislation until 1990.[8] In the absence of any statutorily recognized home detention program, it is unlikely that the Legislature contemplated home detention when it focused on place of confinement in the statute. As such, we find it an unreasonable construction of the statute that "confinement ... in a correctional institution" includes home detention.

---

"(d)(1)—Any person who has been convicted on 2 separate occasions under subsection (b)(1) or subsection (b)(2) of this section or a combination of either, where the convictions do not arise from a single incident, shall be sentenced, on being convicted a third time under subsection (b)(1) or subsection (b)(2) of this section or a combination of either, to imprisonment for the term allowed by law, but, in any event, not less than 25 years."

As amended, House Bill No. 606 included, after the word *incident:*

"and who has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of § 286 or § 286A of this article,...."

8. Maryland's initial statewide home detention legislation took effect July 1, 1990. *See* § 689A. It was at this time that the first regional home detention programs were authorized. *See* § 645U(e) (Harford County); § 645-II(a)(1)(iv) (Wicomico County); § 645W(a)(2) (Baltimore City). *See also* 76 Op. Att'y Gen. 110, 110–11 (1991).

Section 643B,[9] the statute regarding mandatory imprison-
ment for habitual violent offenders, also offers some guidance
in interpreting "confinement . . . in a correctional institution,"
as seen in § 286(d). Similar to legislation regarding habitual
drug offenders, § 643B(c) requires a term of confinement in a
correctional institution prior to qualification as a third-time
violent offender. While the 180–day minimum term of impris-
onment found within § 286(d) is absent in § 643B(c), the
language of the two statutes is similar. Section 643B(a),
however, prior to recodification,[10] defined "correctional institu-
tion" as a facility including "Patuxent Institution and a local or
regional jail or detention center." It did not include "home
detention," and under the statutory rule of construction, *ex-
pressio unius est exclusio alterius*, the expression of one thing
is the exclusion of another, this definition limits the places that
qualify as confinement in a correctional institution. We do not
think it could include home detention. Section 643B was
amended to include confinement in a correctional institution
six years prior to the first structured home detention program
in the United States,[11] and thirteen years before the first

9. Section 643B states in relevant part:

   (c) *Third conviction of crime of violence*—Except as provided in
   subsections (f) and (g) of this section, any person who (1) has been
   convicted on two separate occasions of a crime of violence where the
   convictions do not arise from a single incident, and (2) *has served at
   least one term of confinement in a correctional institution as a result of
   a conviction of a crime of violence*, shall be sentenced, on being
   convicted a third time of a crime of violence, to imprisonment for the
   term allowed by law, but, in any event, not less than 25 years.
   (emphasis added).

10. This language was maintained until § 643B was recodified in Md.
    Code (2002), § 14–101 and § 1–101 of the Criminal Law Article.
    Section 1–101 of the Criminal Law Article states that correctional
    facility is defined as found in Md.Code (2002), § 1–101 of the Correc-
    tional Services Article. This section states in relevant part:

    (d) *Correctional facility*—"Correctional facility" means a facility that
    is operated for the purpose of detaining or confining adults who are
    charged with or found guilty of a crime.

11. The first structured home detention program was instituted in Albu-
    querque, New Mexico in 1983. *See* Fred L. Rush, Jr., *Deinstitutional*

legislation explicitly authorizing home detention in Maryland. The similarity of the language in § 286(d) and § 643B(c) is persuasive evidence that the General Assembly had the same purpose when it mandated a period of confinement in a correctional institution under both statutes.

The State relies heavily on our opinion in *Dedo* to support its contention that the petitioner's home detention qualifies as "confinement . . . in a correctional institution." This interpretation is misguided. *Dedo* was based on the construction of *different words* of a *different statute*, having a *different purpose.* The relevant legislation in *Dedo*, § 638C,[12] provided an individual with credit for time spent in custody prior to conviction. We have explained that this statute is distinguishable from § 286 because § 638C was meant to provide credit, whereas § 286 is meant to enhance punishment. *See Melgar*, 355 Md. at 349, 734 A.2d at 717–18. This difference in diction indicates a distinct legislative intent. Therefore, our decision in *Dedo*, to qualify home detention as incarceration in an institution, cannot be analogized to petitioner's case.

Section 286 is a highly penal statute that must be interpreted in light of the rule of lenity. *See Melgar*, 355 Md. at 347–48, 734 A.2d at 716–17; *Gargliano*, 334 Md. at 437, 639 A.2d at 679. The rule of lenity requires us to limit the breadth of § 286 in this instance. Where the Legislature has not specifically instructed the courts of Maryland to expand the scope of a penal statute, the rule of lenity dictates that we limit such laws to that which can be construed clearly from the statute. As a result, we cannot read § 286(d) to include home

---

*Incapacitation: Home Detention in Pre–Trial and Post–Conviction Contexts*, 13 N. Ky. L.Rev. 375, 376, n. 4 (1987).

**12.** § 638C(a) provided in pertinent part:

Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence or credit against the minimum and maximum terms of an indeterminate sentence for all time spent in custody . . .

It was repealed by 2001 Md. Laws, Ch. 10 § 1 at 80, and replaced by Md.Code (2002), § 6–218(b) of the Criminal Procedure Article.

detention within the definition of "confinement . . . in a correctional institution."

▇▇▇▇▇▇ Finally, where the General Assembly allows enhanced punishment for multiple offenders, as seen in § 286, the State bears the burden of proving all statutory conditions necessary for application of such laws. *See Jones,* 324 Md. at 37, 595 A.2d at 465 (and cases cited therein). State-produced evidence must not only be competent, but must also prove beyond a reasonable doubt that each statutorily imposed prerequisite is satisfied. *See id.* In this particular instance, the State has failed to meet its burden. We hold that the Legislature did not intend home detention to be the equivalent of "confinement . . . in a correctional institution."

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMING SENTENCE REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE SENTENCE IMPOSED BY THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THAT COURT FOR RE–SENTENCING CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

BATTAGLIA, J., dissents.

BATTAGLIA, Judge, dissenting.

I respectfully dissent.

Because I would affirm the Court of Special Appeals' rationale to equate Deville's confinement in home detention[1] to

---

1. In *Bailey v. State,* 355 Md. 287, 734 A.2d 684 (1999), we adopted the United States Sentencing Guidelines' definition of home detention to mean "a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office." *Id.* at 295, 734 A.2d at 688. As the majority noted, programs such as home detention serve to reduce prison overcrowding in Maryland and throughout the country. *See* maj. op. p. 221, n. 1; *see also Bailey,* 355 Md. at 295, 734 A.2d at 688.

confinement in a correctional institution for purposes of applying the enhanced penalty statute under Section 286(d), I respectfully dissent. Although the majority concedes that being placed in home detention is "confined," it declines to adopt the position that service of a sentence in home detention constitutes confinement in a correctional institution under Section 286(d).

There is no question, however, that the Judgment and Commitment Order in the present case states that Deville was sentenced to the Anne Arundel County Department of Detention Facilities to *serve* a period of eighteen months in home incarceration under the House Arrest Alternatives Sentencing Program (HAASP). As such, Deville was sentenced to confinement in a correctional institution with service of that confinement in home detention, and thus, qualifies for the enhanced penalty.

Maryland's enhanced penalty statute for repeat drug offenders, Md. Code (1957, 1996 Repl. Vol.) Art. 27, § 286(d),[2] provides in relevant part:

(d)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this Section or of conspiracy to violate subSection (b)(1) or subsection (b)(2) of this Section shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years if the person previously:

(i) Has served at least 1 term of *confinement* of at least 180 days *in a correctional institution* as a result of a conviction of a previous violation of this Section or § 286A of this article . . .

(emphasis added).

Our goal is to "identify and effectuate the legislative intent underlying the statute(s) at issue." *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000). The best source of legislative intent is the statute's plain language. *Beyer v.*

---

**2.** Section 286 was recodified without substantive change as Md.Code (2002, 2003 Supp.) § 5–608 of the Criminal Law Article, effective Oct. 1, 2002.

*Morgan State Univ.,* 369 Md. 335, 349, 800 A.2d 707, 715 (2002). When the language is clear and unambiguous, our inquiry ordinarily ends there. *Id.* Where the language is ambiguous, however, we must look beyond the plain language of the statute to ascertain the legislative intent, taking into consideration the "purpose, aim, or policy of the enacting body." *In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001). We have stated that,

> [w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are print-ed.... We may and often must consider other "external manifestations" or "persuasive evidence," including ... other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Williams v. Mayor and City Council of Baltimore,* 359 Md. 101, 116, 753 A.2d 41, 49 (2000) (quoting *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987)). Thus, the provisions must be read in "a common-sensical perspective to avoid a farfetched interpretation." *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001).

In this case, the General Assembly did not define what "confinement ... in a correctional institution" means, nor what constitutes a correctional institution under Section 286(d). The majority holds that home detention does not equate to confinement in a correctional institution; rather, a defendant's sentence must have been served in a "jail, detention center, or prison" to qualify for the enhanced penalty under the statute. *See* maj. op. p. 224.

The majority suggests that because home detention was not created in Maryland until 1990, after Section 286(d) was enacted in 1988, the General Assembly must not have contemplated service of a sentence in a home after being ordered confined in a correctional institution, when it focused on the place of confinement within the statute. See maj. op. pp. 229–30. The first structured home detention program in the

United States, however, was created in 1983, seven years before the home detention program was created in Maryland, and five years before the enactment of Section 286(d). *See* Fred L. Rush, Jr., *Deinstitutional Incapacitation: Home Detention in Pre-trial and Post–Conviction Contexts*, 13 N. Ky. L. Rev. 375, 376, n. 4 (1987). By 1985, at least forty-two states had already implemented or were planning home detention programs. *See* Paul J. Hofer and Barbara S. Meierhoefer, *Report, Home Confinement: An Evolving Sanction in the Federal Criminal Justice System* 8 (1987). Interestingly, one of our neighbor states Delaware, enacted its home arrest program in 1987. *See* 66 Del. Laws, c. 29, § 3 (1987). It is just as likely, therefore, that the General Assembly was aware of the existence of such programs, although the majority assumes that the General Assembly could not have contemplated home detention programs when it enacted Section 286(d). Contrary to the majority's contention, then, the context in which the legislation was passed may not be supportive of its interpretation of the General Assembly's intent.

Furthermore, the principles articulated in *Dedo v. State*, 343 Md. 2, 680 A.2d 464 (1996), as the Court of Special Appeals recognized, when applied to the instant case yield the conclusion that service of confinement in home detention equates to actual confinement in a correctional facility. In *Dedo*, we interpreted Section 638C(a) of Article 27,[3] and held that the defendant's commitment to the custody of a county detention center's warden with service of the sentence in home detention was "custody" within the meaning of the statute permitting credit against the defendant's sentence for time served in home detention. *Id.* at 13, 680 A.2d at 470. We explained

---

**3.** Maryland Code, Art. 27 § 638C(a) (1957, 1992 Repl. Vol.) states in relevant part:

    (a) <Credit for time spent in custody before conviction or acquittal.>—Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence of credit against the minimum and maximum terms of an indeterminate sentence for all time spent in the custody of any state, county or city jail correctional institution, hospital, mental hospital or other agency. . . .

that the conditions of the defendant's confinement while under home detention placed substantial restrictions on the defendant's liberty interests, including being eligible for prosecution under the escape statutes. *Id.* We noted:

Where a defendant is punishable for the crime of escape for an unauthorized departure from the place of confinement, the custody requirement of Art. 27, § 638C(a) is met. A defendant is not in "custody" for purposes of Art. 27, § 638C(a) if the conditions of the defendant's confinement do not impose substantial restrictions on the defendant's freedom of association, activity and movement such that unauthorized absence from the place of confinement would be chargeable as the criminal offense of escape under Art. 27, § 139.

*Id.* at 11, 680 A.2d at 469. Moreover, we held that the defendant's home qualified as an institution because he was committed to the custody of the Warden of the Wicomico County Detention Center, and therefore, Dedo was in the custody of a public institution. *Id.* at 13, 680 A.2d at 470. Nevertheless, in this case, the majority limits the *Dedo* interpretation of confinement in home detention because *Dedo* was "based on the construction of *different words* of a *different statute,* having a *different purpose,*" and should not be applied to the case *sub judice.* *See* maj. op. p. 231.

In *Dedo,* however, we recognized that when a person is in custody he is in confinement while serving a sentence in home detention. *See Dedo,* 343 Md. at 11, 680 A.2d at 469. We found persuasive, the fact that the Attorney General, in a 1991 opinion letter, concluded that "an individual confined in home detention was incarcerated 'in a local detention center,' in the sense that the prisoner's home detention can be said to be an extension of the local detention center." *Id.* at 13–14, 680 A.2d at 470. Nevertheless, a mere eight years later, the majority no longer finds this opinion letter persuasive in any way to interpret Section 286(d).

In short, I agree with the intermediate appellate court in this case that, "the conditions placed upon a defendant who

serves his sentence in home detention are sufficiently restrictive as to constitute confinement within the penal system, applies to [Deville's] situation as well." *Deville v. State,* No. 2286, slip op. at 12, 153 Md.App. 718 (Md.App. Nov. 10, 2003). Deville was sentenced to confinement in the Anne Arundel County Detention Center with service of that sentence in home detention; that sentence is sufficient to qualify for enhanced punishment under Section 286(d). The majority's refusal to recognize that service of an order of confinement in home detention equates to confinement in a correctional institution undercuts the ability of trial judges to consider alternate venues for the service of sentences and undermines the structure of our penal system. Therefore, I respectfully dissent.