918 A.2d 499

**Wallace Jerome ROBEY**

v.

**STATE of Maryland.**

**No. 90, Sept. Term, 2006.**

Court of Appeals of Maryland.

March 14, 2007.

**450**

---

Allison E. Pierce, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Argued before RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned), LAWRENCE F. RODOWSKY (Retired, specially assigned), JJ.

HARRELL, J.

We decide in this case whether a restitution order, entered against an adult defendant in excess of $10,000, violates the limitations on restitution orders found in Maryland Code (2001), Criminal Procedure Article, § 11–604(b) (hereinafter "Crim. Proc.").[1] Because we conclude that the relevant statutory limit is applicable only to child defendants, child respondents,[2] and their parents, we hold that a restitution order entered against an adult defendant is not subject to the $10,000 statutory ceiling.

## I. FACTS AND PROCEDURAL HISTORY

On 27 August 2003, Wallace Jerome Robey was convicted in the Circuit Court for Wicomico County of second-degree assault and reckless endangerment. The Circuit Court sentenced Robey to three years imprisonment, all of which was suspended, and ordered restitution[3] in an amount to be deter-

---

**1.** Md.Code (2001), Crim. Proc. Article, § 11–604(b) (hereinafter "Crim. Proc.") provides: "A judgment of restitution for $10,000 issued under Part I of this subtitle is the absolute limit for all acts arising out of a single incident and is the absolute limit against one child, the child's parent, or both."

**2.** The terms "defendant" and "respondent" reflect the distinct processes and goals associated with the adult criminal justice system an d the juvenile justice system, respectively. The term "defendant," which refers to a person who either receives probation before judgment, has been found guilty of a crime, or entered a nolo contendere plea, Crim. Proc., § 11–601(e), is descriptive here of a child who has been charged as an adult pursuant to Md.Code (1974, 2006 Repl.Vol.), Cts. & Jud. Proc. Article, § 3–8A–03(d) (hereinafter "Cts. & Jud. Proc."). On the other hand, the term "respondent" applies to a child who perpetrated a "delinquent act," or an act that, if committed by an adult, would be a crime. Crim. Proc., § 11–101(b); Cts. & Jud. Proc., § 3–8A–01(*l*).

**3.** Robey makes no contention that the restitution order in this case was imposed improperly. *See Chaney v. State*, 397 Md. 460, 470–73 918 A.2d 506, 512–14 (2007), 2007 WL 754635 (No. 91, Sept. Term, 2006) (holding that restitution order may not be imposed absent an affirmative request for restitution on the part of the victim, a fair opportunity for the defendant to dispute such a request, and sufficient admissible evidence to support a request). The record here merely indicates that

mined in a separate hearing. Based on medical bills and correspondence with the victim, Jesse McCoy, the Maryland Division of Parole and Probation recommended the figure of $42,260.75. On 21 November 2003, during the restitution hearing, the Circuit Court imposed on Robey an obligation to pay $42,342.74 [4] in restitution to McCoy. Robey appealed his conviction and sentence to the Court of Special Appeals. He did not prevail. He subsequently challenged the amount of the restitution order in the Circuit Court with a Motion to Correct Illegal Sentence. The limited ground of his motion was that Crim. Proc., § 11–604(b) prohibits a restitution order in an amount exceeding $10,000. The Circuit Court denied Robey's motion and Robey filed a timely appeal to the Court of Special Appeals. Before that court could hear the appeal, we issued a writ of certiorari, on our own motion, to consider Robey's contention that the $10,000 statutory limit on restitution orders applies to adult defendants as well as child defendants and respondents and their parents. We hold that it does not.

## II. DISCUSSION

■ At the time restitution was ordered against Robey, Crim. Proc., § 11–604(b) provided: "A judgment of restitution for $10,000 issued under Part I of this subtitle is the absolute limit for all acts arising out of a single incident and is the absolute limit against one child, the child's parent, or both." Robey posits that § 11–604(b) should be parsed and read so that $10,000 is the absolute limit on the amount of a restitution order: (1) for all acts arising out of a single incident, *and* (2) against one respondent child, the child's parent, or both. By this construction, Robey argues that the $10,000 limit is

restitution was imposed and a separate hearing was held to establish the proper amount to be ordered.

4. There exists in the record contradicting references to the amount of restitution ordered by the Circuit Court. The restitution hearing transcript refers to an amount of $42,342.74 as that ordered by the court and the case history entry from the court's computer system reflects a restitution order of $42,260.75.

applicable to adults under parsed clause (1) of § 11–604(b). As support for his construction, Robey points out that the subtitle dealing with restitution deals with both criminal and juvenile proceedings and that § 11–604 itself contains no language limiting its scope to matters involving only children. He further states that the use of "and" in § 11–604(b) serves to divide the subsection into two distinct clauses: one addressing all matters, and the other addressing matters involving only children. The State contends, however, that the plain language of § 11–604(b), as confirmed by the surrounding context and the statute's legislative history, makes clear that the $10,000 limit on restitution orders is applicable "only to actions wherein the defendant is a child who is charged as an adult in circuit court, or a child respondent in juvenile court, and the restitution payer is the child, the child's parent, or both."

### A. The Plain Language of § 11–604(b)

Confronting us is the familiar task of statutory interpretation, the central canons of which are well-settled. It is patent that "the cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park*, 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484, 487 (2004); *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). This endeavor invariably commences (and frequently ends) with an evaluation of the plain language of the statute in question. *Twine v. State*, 395 Md. 539, 550, 910 A.2d 1132, 1138 (2006); *Deville*, 383 Md. at 223, 858 A.2d at 487. If the plain language is unambiguous, that is, it is not susceptible to more than one reasonable interpretation, we typically cease the inquest into the Legislature's intent and apply the statute accordingly. *Twine*, 395 Md. at 550, 910 A.2d at 1138; *Mayor & Town Council of Oakland*, 392 Md. at 316, 896 A.2d at 1045; *Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 448 n. 8, 849 A.2d 539, 546 n. 8 (2004) (quoting *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995)); *Taylor v. Nations-*

*Bank, N.A.,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001). In construing statutes, we steadfastly refuse to employ " 'forced or subtle interpretations [of a statute] that limit or extend its application.' " *Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576–77, 870 A.2d 186, 193 (2005) (quoting *Price,* 378 Md. at 387, 835 A.2d at 1226); *Taylor,* 365 Md. at 181, 776 A.2d at 654; *Chesapeake & Potomac Tel. Co. of Md. v. Dir. of Fin.,* 343 Md. 567, 579, 683 A.2d 512, 517 (1996); *Condon v. State-Univ. of Md.,* 332 Md. 481, 491, 632 A.2d 753, 758 (1993) (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986)); *Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977). Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. *Stanley v. State,* 390 Md. 175, 185, 887 A.2d 1078, 1084 (2005) (citing *Design Kitchen & Baths v. Lagos,* 388 Md. 718, 730, 882 A.2d 817, 824 (2005); *State v. Glass,* 386 Md. 401, 411, 872 A.2d 729, 735 (2005); and *Mayor & City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000)); *Coleman,* 281 Md. at 546, 380 A.2d at 54; *Chesapeake Amusements, Inc. v. Riddle,* 363 Md. 16, 29, 766 A.2d 1036, 1042–43 (2001); *Morris v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346, 1349 (1990). In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments. *Mayor & Town Council of Oakland,* 392 Md. at 316–17, 896 A.2d at 1045; *Bd. of Physician Quality Assurance v. Mullan,* 381 Md. 157, 168–69, 848 A.2d 642, 649 (2004); *Md. Green Party v. Md. Bd. of Elections,* 377 Md. 127, 178–79, 832 A.2d 214, 244 (2003); *Mid–Atl. Power Supply Ass'n v. Pub. Serv. Comm'n,* 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000); *Bd. of County Comm'rs v. Bell Atl.-Md., Inc.,* 346 Md. 160, 178, 695 A.2d 171, 180 (1997).

Upon a plain reading of the statute, we find the language of § 11–604(b) unambiguous. It is evident to us that the language of subsection (b) contemplates application to a "child, the child's parent, or both" and no other classes of individuals subject to restitution. Robey's attempt to parse the language of § 11–604(b) in order to manufacture a shelter for adult

restitution obligors is without merit. The subsection is devoid of any mention of adult defendants or, in fact, any adult not a parent of a child restitution obligor.

Further, it is not apparent at all that the use of the typically conjunctive term "and" in § 11–604(b) was meant to divide the subsection into two separate classes of individuals: one relating to all acts (by adults and children alike) arising out of a single incident, and the other relating to only children and/or their parents. First, the term "and" ordinarily is not read in the disjunctive as Robey wishes, but rather as "[a] conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first," *Little Store, Inc. v. State*, 295 Md. 158, 163 n. 4, 453 A.2d 1215, 1218 n. 4 (1983) (quoting BLACK'S LAW DICTIONARY 79 (5th ed.1979)), such that the "incident" language is inextricably linked to the "per child and/or parent" language. Second, Robey's interpretation renders impermissibly superfluous the latter half of the subsection, the "per child and/or parent" language. *Mayor & Town Council of Oakland*, 392 Md. at 316, 896 A.2d at 1045; *Harvey v. Marshall*, 389 Md. 243, 292, 884 A.2d 1171, 1200 (2005); *Smack v. Dep't of Health & Mental Hygiene*, 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003). As the State argues persuasively, "[i]f, in fact, the $10,000 limit applies to 'all acts arising out of a single incident' regardless of the defendant's age, then any separate reference to a limit against 'a child, the child's parent, or both' is unnecessary." It is a more reasonable interpretation of § 11–604(b) that the reference to "a child, the child's parent, or both" was meant to apply to the entire subsection to the exclusion of any other classes of persons.

An inspection of the two surrounding subsections that complete § 11–604 confirms that the thrust of the entire statute, including the $10,000 limit on a restitution order, is directed towards child offenders. Subsection (a) sets forth, as a general proposition, that children, their parents, or both may be ordered to pay restitution. Subsection (c) addresses the need to provide parents "a reasonable opportunity to be heard and to present evidence" before a court may order restitution

against parents of child defendants or respondents. This context, which focuses exclusively on the operation of restitution in the realm of matters involving children, without any mention of adult defendants, confirms the propriety of our conclusion that § 11–604(b) does not have any application to adult defendants.

Most telling, however, is the legislative history of the version of Crim. Proc., § 11–604 in force when the restitution order against Robey was entered. During code revision,[5] § 11–604(b) was created and derived from Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 807(a)(3),[6] which dealt solely with restitution in cases involving child defendants and respon-

---

**5.** The Criminal Procedure Article was created in 2001 as part of the ongoing process to review and recompile scattered statutes from the Annotated Code of Maryland into articles organized by like subject matter. Chapter 10, §§ 1, 2 of the Acts of 2001.

**6.** Art. 27, § 807(a)(3) read as follows:

(i) Notwithstanding any other provision of law, if the defendant is a child, the court may order the child, the child's parent, or both to pay restitution to a victim.

(ii) As an absolute limit against one child, the child's parent, or both, a judgment of restitution issued under this section may not exceed $10,000 for all acts arising out of a single incident.

(iii) A court may not enter a judgment of restitution against a parent under this section unless the parent has been afforded a reasonable opportunity to be heard and to present appropriate evidence on the parent's behalf. A hearing under this section may be held as part of the sentencing or disposition hearing.

For purposes of comparison, we reproduce the statute addressing the limitation on restitution, Crim. Proc., § 11–604, in effect when Robey was ordered to pay restitution:

(a) Notwithstanding any other law, if a child is the defendant or child respondent, the court may order the child, the child's parent, or both to pay restitution to a victim.

(b) A judgment of restitution for $10,000 issued under Part I of this subtitle is the absolute limit for all acts arising out of a single incident and is the absolute limit against one child, the child's parent, or both.

(c)(1) A court may not enter a judgment of restitution against a parent under Part I of this subtitle unless the parent has been afforded a reasonable opportunity to be heard and to present evidence.

(2) A hearing under this subsection may be held as part of the sentencing or disposition hearing.

dents.[7] The Revisor's Note accompanying § 11–604, which we view here as a persuasive aid to statutory interpretation, *Comptroller v. Blanton,* 390 Md. 528, 538, 890 A.2d 279, 285 (2006), indicates that the statute was "new language derived without substantive change from former Art. 27, § 807(a)(3)." The fiscal note addressing the revision further supports the notion that the revision generally propagated no substantive departure from the statutes as they were codified in the Annotated Code. DEP'T OF LEGISLATIVE SERVS., FISCAL NOTE, S.B. 1, at 1 (2001) ("This bill recodifies specified existing laws without substantive change."); *see Moore v. State,* 388 Md. 623, 635 n. 4, 882 A.2d 256, 263 n. 4 (2005) (stating that fiscal notes are persuasive sources of evidence in divining legislative intent). Thus, when Crim. Proc., § 11–604 was enacted as the scion of Art. 27, § 807(a)(3), the new statute inherited its progenitor's focus on child restitution. Furthermore, at no point were adult defendants implicated by the 2001 revision creating Crim. Proc., § 11–604.

We glean further substantiation for our reading of § 11–604(b) from a revision of § 11–604(b) that occurred subsequent to the imposition of Robey's restitution order. *Nesbit v. Gov't Employees Ins. Co.,* 382 Md. 65, 78, 854 A.2d 879, 886–87 (2004) (indicating that subsequent enactments may provide persuasive information for the construction of an earlier version of the same statute) (citing *Tracey v. Tracey,* 328 Md. 380, 385–87, 614 A.2d 590, 593–94 (1992)). In 2005, the General Assembly eliminated the overall ceiling of restitution for a single incident and focused on imposing a limit on the

---

**7.** Art. 27, § 807(a)(3) was the product of a revision instigated by the passage of the Victim's Rights Act of 1997, which, *inter alia,* merged into the new Art. 27, § 807(a)(3) one statute regarding restitution orders against child defendants charged as adults, Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 807(m), and another focusing on restitution imposed on children in juvenile courts, Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 808. Chapters 311, 312, § 1 of the Acts of 1997; *see Grey v. Allstate Ins. Co.,* 363 Md. 445, 462, 769 A.2d 891, 901 (2001). The conflation of these two statutes, which concerned only children, makes clear that the scope of the resultant Art. 27, § 807(a)(3) was limited to restitution orders imposed on children.

liability of individual children when there are multiple actors in a single incident. Chapter 512, § 1 of the Acts of 2005 ("A judgment of restitution for $10,000 issued under Part I of this subtitle is the absolute limit for all [each child's] acts arising out of a single incident ~~and is the absolute limit against one child, the child's parent, or both~~.") (emphasis in original). The newly revised statute lacks any mention of adult defendants. Moreover, it altered the phrase which Robey argues covered adult defendants by inserting language relating only to children. Tellingly, the portion of the fiscal note addressing this change did not discuss a substantive change effecting the limits of restitution awards imposed on adult defendants. Rather, the note described the revision as effecting only matters involving child defendants or respondents and their parents, elevating the potential for victims to recover more from multiple actors in a single incident than possible under the previous statute. DEP'T OF LEGISLATIVE SERVS., FISCAL NOTE, S.B. 873, at 2 (2005) ("A victim may receive a restitution judgment up to $10,000 for each child's act arising out of a single incident, instead of a maximum cap of $10,000 for the incident, regardless of the number of actors.").

## B.  Objectives of Restitution

We also consider the objectives of restitution as it may affect our interpretation of Crim. Proc., § 11–604(b). Contrary to Robey's assertion, the principal objective of restitution in the adult and juvenile justice systems is differently nuanced in each. It is clear that restitution is significantly rehabilitative in nature in the adult system, *see Grey v. Allstate Ins. Co.*, 363 Md. 445, 460, 769 A.2d 891, 900 (2001) (citing *Coles v. State*, 290 Md. 296, 305, 429 A.2d 1029, 1034 (1981) and *Lee v. State*, 307 Md. 74, 78, 512 A.2d 372, 374 (1986)), but especially so in the juvenile system. *In re Don Mc.*, 344 Md. 194, 203, 686 A.2d 269, 273 (1996); *see* Cts. & Jud. Proc., § 3–8A–02(a)(4).

As restitution relates to the child alone, its sole purpose is rehabilitative. *Lopez–Sanchez v. State*, 388 Md. 214, 247, 879 A.2d 695, 714 (2005). Robey's contention that restitution is

"penal in nature," as applied to the child defendant or respondent, is misplaced. Robey relies on language from *In re John M.*, 129 Md.App. 165, 174, 741 A.2d 503, 508 (1999) (quoting *In re Zephrin D.*, 69 Md.App. 755, 761, 519 A.2d 806, 809 (1987) ("*Zephrin D.*")) as support for his position, but neglects to discuss fully from whence this retributive or penal quality was ascribed to the restitution statute. The Court of Special Appeals in *Zephrin D.* drew the "penal in nature" language it used to describe restitution in the juvenile system from an earlier case, *In re Appeal No. 321*, 24 Md.App. 82, 85, 329 A.2d 113, 114 (1974), which, importantly, discussed the retributive element of restitution as applied to the parents of child offenders. The *In re Appeal No. 321* court justified the imposition of restitution on parents by reasoning that "vicarious liability is imposed as a consequence of a presumed neglect of parental responsibilities." 24 Md.App. at 85, 329 A.2d at 114. Thus, in the context of child restitution orders, the only retributive consideration is directed towards the parents of child offenders. *Lopez–Sanchez*, 388 Md. at 247 n. 7, 879 A.2d at 714 n. 7; *see also* Cts. & Jud. Proc., § 3–8A–02(a)(2), (3).

Because rehabilitation is the main objective of the juvenile justice system and its dispositional consequences, such as restitution, it is consistent with that objective to limit the amount of restitution to which a child may be obligated to pay. Placing an insurmountable debt on a child offender necessarily defeats the rehabilitative purpose of imposing restitution in the first instance because the child may endeavor forever to satisfy the obligation without success. Such futility frustrates the goal of rehabilitation, which aims at the successful completion of a disposition. Conversely, there is no policy rationale for imposing a limit on the amount of restitution which an adult defendant may be obligated to pay.

JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED; COSTS TO BE PAID BY PETITIONER.