HETRICH ᴇᴛ ᴀʟ. *v.* COUNTY COMMISSIONERS
OF ANNE ARUNDEL COUNTY ᴇᴛ ᴀʟ.

[No. 207, September Term, 1959.]

*Decided  April 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Samuel Schenker,* for appellants.

*James C. Morton, Jr.,* and *W. Harvey Beardmore,* for appellees.

HAMMOND, J., delivered the opinion of the Court.

The appeal is by taxpayers who sought unsuccessfully to have the Circuit Court for Anne Arundel County issue the writ of mandamus to compel Frank W. Wilde to vacate the office of County Commissioner by reason of having accepted the office of County Business Manager.

Wilde was elected in 1958 to a four year term as commissioner, was made president of the Board of Commissioners, and is still serving in both capacities.

The County Business Manager resigned on March 24, 1959, and that same day the Board accepted the resignation as of March 31 and "appointed Frank W. Wilde as Acting County Manager without pay until a permanent County Manager is appointed." Wilde took over the duties of Manager on April 1, and on April 17 executed a bond for faithful performance in the amount of $25,000 as required of that officer by Sec. 2-37 of the Anne Arundel County Code (1957 Ed.). On May 28, 1959, the petition for *mandamus* was filed, and on June 9 Wilde ceased acting as Manager. It is stipulated that he received no salary other than as County Commissioner and took no oath of office.

Below, as in this Court, the case proceeded on the recognition that a County Commissioner holds an office of profit within the meaning of Article 35 of the Declaration of Rights of the Maryland Constitution. The trial judge held that the position of County Business Manager was also an office of profit and one incompatible with the office of County Commissioner under common law rules, so that the acceptance of

the second office may have caused Wilde automatically to have vacated the first. He held, however, that in the exercise of a sound discretion the writ need not issue because it would serve no useful purpose in that Wilde at the time of trial had vacated the second office. We concur in the result reached by the trial judge, although for reasons that differ from his.

We agree that the County Business Manager of Anne Arundel County is an officer. A number of tests have evolved as aids in recognizing an office—is an oath prescribed, does the holder exercise some part of the sovereign power in his own right, is a commission issued, is there a definite term or tenure fixed by law, is a bond required? None of itself necessarily is determinative. In *Pressman v. D'Alesandro,* 211 Md. 50, 55, the ultimate test was succinctly stated in this fashion: "This Court has stated that a position is a 'public office' where it has been created by law and casts upon the incumbent duties which are continuing in their nature and not occasional and call for the exercise of some portion of the sovereignty of the State. *Buchholtz v. Hill,* 178 Md. 280, 13 A. 2d 348." See also *State to Use of Clark v. Ferling,* 220 Md. 109, 113. The Act which provided for a County Business Manager—Chapter 638 of the Acts of 1947, codified as Sections 2-35 through 2-42 of the Anne Arundel County Code (1957 Ed.), says in Sec. 2-35: "There is hereby created the office of county business manager." Sec. 2-36 refers to "the duties of his office." Sec. 2-39 provides that "[i]n the performance of his duties * * * the county business manager shall represent the county in all departments of the county government. It is the intent of this article to place under his direct supervision all departments, offices and agencies of the county government within the limits now or hereafter imposed upon the jurisdiction of the board of county commissioners * * *." Sec. 2-40 requires the manager, among various other things, to "[a]ppoint and, when necessary for the good of the service, remove any officers and employees of the county * * *" (other than in the police department and board of licensing commissioners). Sec. 2-37 requires the manager to file a bond in the sum of $25,000. Clearly, the manager exercises continuously a substantial part of the governmental power in Anne Arundel County.

We agree with the trial court also that the offices of County Business Manager and County Commissioner are incompatible. The fundamental test of incompatibility at common law is whether there is a present or prospective conflict of interest, as where one office is subordinate to the other or subject to supervision by the other, or where the incumbent of one office has the power to appoint or remove or to set the salary of the other. McQuillen, *Municipal Corporations,* Sec. 12.67 (3rd Ed.); 67 C.J.S., *Officers,* Sec. 23 (a). The statute puts the power of appointment and removal of the Manager in the County Commissioners and they fix his salary over a minimum. "He shall be responsible to the board of county commissioners for the proper administration of all affairs of the county * * *."

In *Lilly v. Jones,* 158 Md. 260, 266, in holding that one who was a member of both the City Service Commission and the Port Development Commission held incompatible offices, this Court adopted this standard: "The test of incompatibility is the character and relation of the offices; as where one is subordinate to the other, and subject in some degree to its revisory power; or where the functions of the two offices are inherently inconsistent and repugnant. In such cases it has uniformly been held that the same person cannot hold both offices." The language is apposite here, and the applicable code provisions makes it clear that the two offices are incompatible.

The general rule at common law is that if an officer accepts a second office which is incompatible with the first, he vacates the first. *Lilly v. Jones, supra.* Many courts have adopted a qualification to the general rule if the one who accepted the second office was ineligible for that office. It is held in such instances that the attempted appointment was void, a nullity, and that the second acceptance was illusory, some courts deciding that the incumbent was not even a *de facto* officer, others that he was.

In *Kimble v. Bender,* 173 Md. 608, Kimble was appointed a justice of the peace for Allegany County, an office created while he was a State senator. The Court held that he was ineligible as a justice because Sec. 17 of Art. III of the Con-

stitution of Maryland specifies that no senator shall during the term for which he was elected "be eligible to any office, which shall have been created * * * during such term." Judge Parke, for the Court, said (p. 622): "The appointment of an ineligible person is a nullity, except that the official acts of such a person are regarded as the acts of an officer *de facto*. So the official acts of the ineligible respondent, who has acted as a justice of the peace at large under a valid act but under an invalid appointment are the acts of a *de facto* officer, * * * are as valid and effective, where they concern the public or the rights of third persons, as though he were an officer *de jure*."

The ineligibility which makes the appointment to a second office a nullity has not been limited to that created by constitution or statute. Even in the absence of these formalized prohibitions, at common law, on the ground of public policy a member of an appointing body is ineligible for appointment to a conflicting office by that body, even though his own vote is not essential to the appointment. McQuillen, *Municipal Corporations*, Sec. 12.75; 67 C.J.S., *Officers*, Sec. 20; 42 Am. Jur., *Public Officers*, Sec. 97, p. 955; Annotation: 31 L. R. A. (N. S.) 575. Cases supporting the texts and the annotation include *Wood v. Town of Whitehall*, 197 N. Y. S. 789 (affirmed 201 N. Y. S. 959), in which many of the cases so holding are discussed; *Meglemery v. Weissinger* (Ky.), 131 S. W. 40; *Gaw v. Ashley* (Mass.), 80 N. E. 790; *People ex rel. Ellis v. Lennon* (Mich.), 49 N. W. 308; *Kinyon v. Duchene*, 21 Mich. 498; *State v. Kearns* (Ohio), 25 N. E. 1027; *State ex rel. Smith v. Bowman* (Mo. App.), 170 S. W. 700; *Arbogast v. Shields* (W. Va.), 14 S. E. 2d 4; *Commonwealth ex rel. McCreary, Dist. Atty. v. Major* (Pa.), 22 A. 2d 686, 689; *State v. Thompson* (Tenn.), 246 S. W. 2d 59. See also *Beebe v. Board of Supervisors of Sullivan County*, 19 N. Y. S. 629 (affirmed on opinion below 37 N. E. 566); and *Commonwealth v. Douglass*, 1 Bin (Pa.), 77.

The cases ground the public policy prohibition on the need for impartial official action, without suspicion of bias which may be against public interest. They say the appointing board cannot absolve itself of ulterior motives if it appoints

one of its own, whether or not his vote was necessary to the appointment, since the opportunity improperly to influence the other members of the board is there. The necessity that public bodies be free from personal influence in making appointments to office cannot be secured when the appointee has the real opportunity his associations and relations afford to place his colleagues under obligations they may feel require repayment.

It has been held expressly in various instances in which the appointee to the second office was ineligible for appointment that purported acceptance of the second did not vacate the first. Cases in which the ineligibility for the second office was constitutional and continuance in the first office was not affected by acceptance of the second, are *McWilliams v. Neal* (Ga.), 61 S. E. 721, and *State ex rel. Childs v. Sutton* (Minn.), 65 N. W. 262. Cases of statutory bans that reached a similar result are: *State v. Kearns, supra; Daviess County v. Goodwin* (Ky.), 77 S. W. 185, 186 ("The authorities relied on for appellant as to the acceptance of an incompatible office have no application, as the order of the fiscal court appointing the county judge as supervisor was void, and vested in him no right to the office.").

There are two leading cases in which the ban was neither constitutional nor expressly statutory. In *Commonwealth ex rel. McCreary, Dist. Atty. v. Major* (Pa.), 22 A. 2d 686, a councilman of the city of Beaver Falls was elected by the council a member of the Board of the Beaver Falls Municipal Authority. *Quo warranto* was sought to remove him from the second office, and was granted. The Court held that a member of the Board of Authority was a public officer and that "well-established public policy prohibits respondent and his colleagues from using their official appointing power as councilmen of the City of Beaver Falls to appoint themselves members of the Board of Authority." (p. 688) The Court rejected as untenable the proposition of the respondent that by agreeing to serve as a Board of Authority member without pay, he could make his appointment to the second office valid.

In *State v. Thompson* (Tenn.), 246 S. W. 2d 59, 61, a citizens bill in the nature of a *quo warranto* charged Thomp-

son with having forfeited his office as a member of the Board of Commissioners of Paris, Tennessee, by accepting and exercising the office of City Manager, to which the Board of Commissioners had elected him. The Court said: " 'The rule at common law is that, where one accepts a second office incompatible with one already held by him, the office first held is thereby ipso facto terminated without judicial proceedings of any kind.' * * * However, if Thompson's appointment to the second office was void, it follows that his attempted acceptance of that second office was likewise legally ineffective. In this plight of the case the question arises as to whether this common law rule would apply." The holding was that the Board had no power either under the statute or at common law to appoint one of its own members City Manager and that "In as much as Thompson's attempted acceptance of the second office (City Manager) was legally ineffective, it results that Thompson has not, legally speaking, held a second office while holding his first and incompatible office of Commissioner." The case was remanded for the entry of a decree adjudging that Thompson had been usurping unlawfully the office of City Manager, that he did not vacate his office as Commissioner, that he be enjoined from further exercise of the office of City Manager and be ordered to repay the salary he had been paid as such.

It is our view that the reasons we have discussed, which make the office of County Manager of Anne Arundel County and the office of County Commissioner incompatible, tend to show that the Legislature did not intend the County Commissioners to appoint one of their number as County Business Manager. This view is strengthened by two sections of the Anne Arundel County Code (1957 Ed.), to which reference has not yet been made. Section 2-42 provides that the duties of business manager during his temporary absence or disability shall be performed "by a qualified administrative officer of the county, designated in writing by the manager, or by the board of county commissioners, by appropriate resolution, in the event the manager fails to make such designation." Section 9-42 makes this provision: "Whenever the county business manager is absent for any cause or a vacancy exists in

the office of county business manager, the director of the department of assessments shall perform the duties and exercise the powers of the county business manager under this article."

We agree with the reasoning of the Supreme Courts of Pennsylvania and Tennessee in the *Beaver Falls* and *Paris* cases, cited above, and hold that under the applicable statutes and at common law one holding the office of County Commissioner of Anne Arundel County was ineligible for appointment by the Commissioners to the office of County Business Manager. The attempted appointment of Wilde to the latter office was ineffective and he did not hold a second office of profit within the meaning of Art. 35 of the Declaration of Rights, or an incompatible office under the common law rule. This being so, Wilde did not vacate the office of County Commissioner and the trial court was correct in refusing to grant the writ of mandamus ousting him from that office.

We think the better reasoned authority indicates that Wilde's acts as County Business Manager, having been performed under color of authority, were valid as to third persons and the general public, as those of a *de facto* officer.

*Order affirmed, with costs.*