Dear The Honorable K. Bennett Bozman
You request our opinion whether an Ocean City police officer may serve as a member of the Ocean City Council. We conclude that, although a police officer may seek election to the Council while remaining on the police force, the common law doctrine of incompatible positions precludes simultaneous service as a Council member and police officer in Ocean City. We note, however, that the town itself may resolve the issue of a police officer's service on the City Council by either abrogating the doctrine of incompatible positions or explicitly prohibiting service on the City Council by town employees.
 I Discussion
A. Anti-Hatch Act
In a recent opinion this Office reiterated that State law guarantees State and local government employees the right to run for public office. 85 Opinions of the Attorney General ____ (2000) [Opinion. No. 00-014 (June 12, 2000)] at 2. This law, commonly called the anti-Hatch Act, preempts municipal charter provisions that bar municipal employees from running for office.[1]Id. at p. 5. The Law Enforcement Officer's Bill of Rights ("LEOBR") reiterates that police officers enjoy the same right to engage in political activities as other public employees.See Annotated Code of Maryland, Article 27, § 728(a). However, neither statute guarantees the right to hold office as distinguished from the right to run for office. Whether an Ocean City police officer who has successfully run for the Council may take office and also continue to serve as a police officer requires consideration of the constitutional limitation on dual office holding, the town charter, and the common-law doctrine of incompatible offices.
B. Constitutional Proscription Against Dual Office-Holding
Article 35 of the Maryland Declaration of Rights provides, in relevant part, "[t]hat, no person shall hold, at the same time, more than one office of profit, created by the Constitution or Laws of the State." However, in 1996 Article 35 was amended to provide, in part, that "[n]onelected membership in . . . a law enforcement agency . . . shall not be considered an office of profit within the meaning of this Article." Chapter 80, Laws of Maryland, 1996, ratified November 5, 1996. Thus, even if the position of police officer would otherwise be considered an office of profit, the 1996 amendment to Article 35 would allow a police officer to hold another office of profit, such as membership on the Ocean City Council. However, the 1996 constitutional amendment did not abrogate other limitations that might exist by virtue of statute, local charter or ordinance, or the common law.[2]
C. City Charter
Until recently the town charter provided, in part, that "no officer or employee in the classified service of the town shall continue in such position after becoming a candidate for nomination or election to any public office." Ocean City Charter § C-1005. However, this provision was deleted earlier this year, apparently because the anti-Hatch Act clearly superseded it. Ocean City Charter Resolution Amendment No. 2000-1. The town charter does not otherwise bar a municipal employee who successfully runs for town office from simultaneously serving as both an employee and an elected official.[3]
D. Common law Doctrine of Incompatible Positions
Finally, we must assess whether simultaneous service as a police officer and Council member is barred by the common law doctrine of incompatible positions. The Court of Appeals has summarized the test of incompatibility as follows:
 The fundamental test of incompatibility at common law is whether there is a present or prospective conflict of interest, as where one office is subordinate to the other or subject to supervision by the other, or where the incumbent of one office has the power to appoint or remove or to set the salary of the other.
Hetrich v. County Commissioners of Anne Arundel County, 222 Md. 304,308, 159 A.2d 642 (1960). See also Lilly v. Jones, 158 Md. 260,266, 148 A. 434 (1930). The doctrine applies not only to public "offices" but also to "positions." Howard County MetropolitanComm'n v. Westphal, 232 Md. 334, 342-43, 193 A.2d 56 (1963).
In Hetrich, the Court of Appeals held that the offices of county commissioner and county business manager were incompatible, because the county commissioners appointed the business manager and set his salary. Similarly, a 1988 opinion of this Office concluded that the doctrine barred an employee of a municipal water department from also holding the position of mayor, because of the mayor's supervisory authority over town employees. Opinion No. 88-014 (March 1, 1988) (unpublished). Pertinent to your inquiry, that opinion also noted that "[i]f the Town Council shares in the power to supervise, then the incompatibility of positions doctrine would likewise preclude the employee's service on the Council." Id. at p. 4 n. 4. The opinion conceded that the lines of authority between some positions might be too attenuated to implicate the doctrine, but left resolution to a case-by-case determination. Id.
Application of the doctrine of incompatible positions thus depends on the relationship, as established by the town charter and ordinances, between the Ocean City Council and the police department. The charter provides that the governing body of Ocean City is the Mayor and City Council, which consists of seven members. Ocean City Charter, § C-403B. The Council holds all legislative and, except for the mayoral veto, all executive powers of the town. § C-413A.
The express powers of the Council include the power to set policy, to enact ordinances, to establish salaries for all officials and employees, to appoint certain officials, including the City Manager, and to supervise the City Manager. §§ C-413A, C-414J, and C-1007. Among the responsibilities of the City Manager is the hiring, supervision and discharge of all town employees except department heads. § C-1001B. The Council may ordinarily deal with, or issue orders to, individual town employees only through the City Manager, who is the "chief administrative officer of the town." §§ C-413A, C-1001A.
With specific reference to the police department, the Council has the power "to establish, operate, and maintain a police force" and to legislate concerning the City's police powers. § C-414(47)-(48). The charter also creates a special Police Commission to "supervise and head the administration of the Police Department." § C-413. The Commission consists of the Mayor and three members of the Council who serve at the pleasure of the entire Council. Id. The Chief of Police is appointed by the Mayor and the entire Council. Id. The Chief establishes the rules, general orders, and procedures for the police department, subject to the approval of the Mayor and City Council. Ocean City Code § 15-1.
Under this structure, the relationship of a Council member to an individual police officer is somewhat indirect. Although a police officer is in a sense subordinate to the Council, the Council does not appoint or remove individual officers, and it supervises them through other town officials. While the Charter describes the Council as sharing the town's executive power with the Mayor, the supervision, hiring, and discharge of town employees is expressly vested in the City Manager. Similarly, a police officer is under the supervision of the Chief of Police, and disciplinary proceedings would follow the procedures of the LEOBR without the participation of the Council. These factors suggest that the position of police officer is attenuated from that of Council member.
On the other hand, although insulated in some respects from direct supervision by the municipal governing body, police officers are subject ultimately to direction and control of civilian officials elected by, and accountable to, the town's citizens. The City Manager must answer to the Council. In addition, Council members have a special role in overseeing the police department. The Chief of Police is subject to supervision both by the Council and the Police Commission, which is essentially a special committee of the Mayor and City Council. The Council also has approval authority over the department's regulations and procedures, and determines the department's budget — a budget that includes salary and grade plans for police officers.
An officer who is directly supervised by the Chief of Police and who also serves on the Council would thus be in the untenable position of being supervised by a town official who is answerable to the officer in the officer's capacity as a Council member. In our opinion, these circumstances portend a "present or prospective conflict of interest" that, according to Hetrich, triggers the incompatible positions doctrine. In similar circumstances, in which two positions stood in opposing relationships with a third position, courts have held the two positions to be incompatible.See, e.g., Fitzsimmons v. Swailes, 463 N.E.2d 431, 436
(Ill.S.Ct. 1984) (under doctrine of incompatible positions, township assessor could not simultaneously serve as county board member, because county board selected assessor's supervisor); Teros v.Verbeck, 506 N.E.2d 464, 466 (Ill.App. 1987) (doctrine barred a deputy county coroner from serving as a member of the county board that set the salary and budget of the county coroner).
The incompatibility problem would not be solved by recusal. To be sure, a police officer who sat on the Ocean City Council could decline to serve on the Police Commission or to vote on matters relating to the police department, in order to avoid any conflicts of interest[4] between the roles of elected official and public employee. In the case of an officer directly supervised by the Chief of Police, we do not believe that recusal would cure the incompatibility of the two positions. See Teros v.Verbeck, supra, 506 N.E.2d at 466 (recusal would not cure incompatibility of position).
A closer question is presented if a low-ranking police officer, not directly supervised by the Chief of Police, seeks to serve on the Council. However, given that a key function of local government is public safety, a Council member who could not participate in Council deliberations or decisions concerning police matters would, in essence, be rendered unable to perform an important aspect of the position to which the member had been elected. This inability to perform the responsibilities of the office lies at the root of the doctrine of incompatible positions. Unsurprisingly, then, in recent years, state Attorneys General have generally concluded that the incompatible positions doctrine bars local police officers, of whatever rank, from serving in other executive capacities in local government. See, e.g., 81 Ops. Cal. Atty. Gen. 304 (1998), 1998 WL 673212 (positions of police chief and city manager are incompatible); 1996 Mich. OAG No. 6903, 1996 WL 283717 (positions of township police chief and county commissioner are incompatible); 1993 N.Y. Op. Atty. Gen. (Inf.) 1038, 1993 WL 255333 (positions of village police officer and village mayor or trustee are incompatible). In our opinion, that doctrine forecloses simultaneous service as a police officer and Council member in Ocean City.
In summary, we believe that the position of Ocean City police officer is incompatible with membership on a governing body like the Ocean City Council that wields executive authority over the police department, although this conclusion is not free from doubt with respect to low ranking officers not directly supervised by the Chief of Police. Our conclusion is based in part on the executive authority shared by the Ocean City Council and the important public safety functions performed by a police officer. It does not necessarily follow that the incompatible positions doctrine would bar all Ocean City employees from serving on the Council. Moreover, a different conclusion may pertain in a jurisdiction in which the council is a legislative body and does not hold executive authority.
It should be noted that the town may itself decide this question. For example, the town could by ordinance or charter amendment abrogate the common law doctrine of incompatible positions in Ocean City and remove this obstacle to service by a police officer on the City Council.[5] Conversely, the town could enact a charter amendment that bars its elected officials from holding specified positions in the town government or from municipal employment generally.
 II Conclusion
In our opinion, under current law, the position of Ocean City police officer is incompatible with the position of City Council member. The town itself, however, is free to decide whether to allow service by a police officer on the City Council.
 J. Joseph Curran, Jr. Attorney General
 Richard E. Israel Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] When the anti-Hatch Act was first enacted in 1973, it was codified as §§ 28-1 and 28-2 of Article 33 of the Annotated Code of Maryland, the State Election Code. Chapter 796, Laws of Maryland 1973. Subsequent recodification separated provisions relating to State employees from those pertaining to employees of local government. The provisions relating to State employees are now codified as § 2-304 of the State Personnel and Pensions Article. The provisions relating to local government employees are now codified as §§ 13-101 through 13-106 of Article 24, as amended by Chapter 154, Laws of Maryland, 2000.
[2] In recommending a revision of Article 35 to allow the General Assembly to make statutory exemptions, the Task Force to Study Dual Office Holding noted that there was no intent to affect other legal limitations. Report of the Task Force to Study DualOffice Holding, at pp. 16-17.
[3] Such a charter provision would not be preempted by the anti-Hatch Act. See 85 Opinions of the Attorney General ____ (2000) [Opinion. No. 00-014 (June 12, 2000)] at pp. 5-6.
[4] The Charter has an express conflict of interest provision that applies to "all officials, employees or agents of any department, board, commission or other public agency of the Town of Ocean City." § C-1409. It is not entirely clear whether this provision applies to the Council.
[5] The State Legislature has abrogated the doctrine of incompatible positions with respect to State employees who serve in the General Assembly. See Annotated Code of Maryland, State Government Article ("SG"), § 2-105; 57 Opinions of the AttorneyGeneral 266, 274-77 (1972). Even though the doctrine has been abrogated for service in the General Assembly, the Maryland Public Ethics Law restricts a legislator's ability to earn income from State agencies. See SG § 15-513. Similarly, even if the common law doctrine is abrogated in Ocean City, such service may be subject to certain limitations under the State and local ethics laws.
 *Page 225