## PUBLIC OFFICERS AND EMPLOYEES

**LOCAL GOVERNMENT – BOARD OF COUNTY COMMISSIONERS MAY NOT APPOINT ONE OF ITS OWN MEMBERS AS A NON-EX OFFICIO MEMBER OF THE PLANNING COMMISSION**

December 23, 2014

*The Honorable Jan H. Gardner*
*County Executive*

You have asked for our opinion on whether the Board of County Commissioners of Frederick County ("BOCC"), in the final days of its existence as the County's governing body,[1] validly appointed its sitting president to the Frederick County Planning Commission. Specifically, you ask whether the BOCC's November 24, 2014 appointment of then-President Blaine Young to the planning commission either resulted in his holding two "offices of profit" in violation of Article 35 of the Declaration of Rights or violated the common law rule against "incompatible" positions. You also ask what effect any violation of those principles would have on Mr. Young's continuing service on the planning commission.

In accordance with our policy, you provided an opinion of the County Attorney on these questions. The County Attorney concluded that Mr. Young's appointment violated both the dual office-holding prohibition of Article 35 and the common law rule barring an individual from holding two incompatible positions, but that it was not clear which of the two positions Mr. Young retained as a result. *See* Memorandum of John S. Mathias, County Attorney, to Jan H. Gardner, County Executive (Dec. 9, 2014) ("County Attorney Opinion"). We also received materials from Mr. Young, including a November 6, 2014 email from the County Attorney addressing the potential effect of simultaneously holding two offices of profit and a letter from C. Paul Smith—a former

---

[1] Effective December 1, 2014, Frederick County became a charter county governed by a seven-member County Council, with certain powers granted to an elected County Executive. *See* Frederick County Charter §§ 802, 201, Article 4.

colleague of Mr. Young on the BOCC—requesting that we not render an opinion.[2]

We agree with the County Attorney's conclusion that the two positions are "offices of profit" and "incompatible," but, for reasons based on other law, we conclude that Mr. Young was ineligible for appointment as a "citizen"[3] member of the planning commission and thus never validly held the position. The common law generally prohibits a body from appointing one of its own members to a position on another body. Section 2-102 of the Land Use Article provides an exception to the common law; it authorizes a board of county commissioners to appoint one its members to serve on the planning commission in an *ex officio* capacity. It does not, however, authorize the county commissioners to appoint one of their own as a non-*ex officio* member of the planning commission. Because the statutory provision is a specific grant of authority that was enacted in derogation of common law, it must be construed narrowly so as not to imply additional powers. So construed, the statute does not give the BOCC the power to appoint Mr. Young as a "citizen" member of

---

[2] In his letter, Mr. Smith asserts that it is not appropriate for us to issue an opinion here because "this matter is an actual, existing case and controversy," and because Mr. Smith did not "believe Article V of the State Constitution authorizes such an opinion." Letter from C. Paul Smith to Douglas F. Gansler, Attorney General (Dec. 15, 2014). We disagree. Although we generally will not issue an opinion on any question that is the subject of current or imminent litigation, we are not aware of any such litigation here. And while Article V, § 3 of the Maryland Constitution does not require us to issue opinions in response to local government requests, when resources allow, we provide assistance to local governments to "help resolve legal matters involving substantial issues of State law." *See* "Frequently Asked Questions About Opinions of the Attorney General; Can a local government official request an Opinion of the Attorney General?" (*available at* http://www.oag.state.md.us/Opinions/faq.htm). We have previously issued opinions in response to requests from the Frederick County Board of County Commissioners. *See*, *e.g.*, 87 *Opinions of the Attorney General* 66 (2002); 67 *Opinions of the Attorney General* 151 (1982); 71 *Opinions of the Attorney General* 128 (1986).

[3] Participants in the November 24 BOCC meeting that resulted in Mr. Young's recent appointment used the term "citizen member" and "five-year member" to describe a member of the planning commission who does not serve in an *ex officio* capacity. We use the term "citizen" member in that same sense.

the planning commission. Mr. Young was thus ineligible for the position, and his appointment was ineffective from the outset.

## I

## Background

The questions you pose require us to describe the law governing the composition of local jurisdictions' planning commissions and the facts regarding the appointment of Mr. Young to Frederick County's planning commission. Also relevant are the provisions of the Frederick County Code on the compensation of members of the BOCC and the planning commission.

### A. *Provisions Governing Planning Commission Membership*

#### 1. **State Law**

The Land Use Article of the Maryland Annotated Code authorizes local jurisdictions to "establish by local law a planning commission with the powers and duties set forth in [Division I of the Land Use Article]." Md. Code Ann., Land Use ("LU") § 2-101; *see also* LU § 1-101(i) (defining "local jurisdiction" to include "a county").[4] The Article also sets forth the parameters applicable to a local jurisdiction's establishment of a planning commission, if it chooses to establish one. As relevant here, the statute prescribes the composition of the planning commissions that local jurisdictions may create: a planning commission may consist of "three, five, or seven members," and "[o]ne member may be a member of the legislative body, who serves as an ex officio member concurrent with the member's legislative term." LU § 2-102(a). The statute also sets the term for the other, "citizen," members: "The term of a planning commission member other than an ex officio member is: (i) 5 years; or (ii) until the member's successor takes office." LU § 2-102(c)(1).

Planning commission members are appointed by the local jurisdiction's governing body or its designee under the applicable local law, or, "if there is a single elected local executive," by the executive, subject to confirmation by the legislative body. LU § 2-102(b). The statute also provides for appointments in the event of a mid-term vacancy: "If a vacancy occurs during the

---

[4] Except as noted, all references to the Land Use Article are to the 2012 volume, with the 2014 Supplement.

term of an appointed member, the vacancy shall be filled for the unexpired term in the same manner as is required for appointment under [§ 2-102(b)]." LU § 2-102(e).

## 2. Local Law

Frederick County has elected to create a planning commission. *See* Public Local Law for Frederick County, Frederick County Code ("County Code") § 1-13-16. Because the ordinances that address the organization of the planning commission do not explicitly identify what entity has the authority to appoint members of the planning commission, *see id.* §§ 1-13-16 through 1-13-21, the BOCC was by default the appointing authority under LU § 2-102(b)(1) while Frederick County operated under the commission form of governance. As to vacancies, the County Code provides: "Vacancies occurring otherwise than through the expiration of term shall be filled for the unexpired term by the County Commissioners." County Code § 1-13-18. Planning commission members are "eligible for reappointment." *Id*. Effective December 1, 2014, however, the County Executive holds the power to appoint members to fill any type of vacancy on the planning commission. Frederick County Charter § 412(b).

As required by the County Code, the planning commission has adopted rules that govern the transaction of business before it. *See* Rules of Procedure of the Frederick County Planning Commission ("Planning Commission Rules"); County Code § 1-13-19 (requiring the planning commission to adopt rules). Section 2.3 of those rules provides: "A designated member of the County Commissioners may serve as a voting member or may be a member of the [Planning] Commission having all the rights and privileges of the regularly appointed members, and serve in an ex-officio capacity concurrent with his or her official term, as determined by the Board of County Commissioners."

## B. *County Provisions on the Compensation of the Board of County Commissioners and the Planning Commission*

Section 2-2-18(a)(l) of the Frederick County Code provides: "Each member of the board of county commissioners is entitled to an annual salary of $45,000 as full compensation for services as a member of the board of county commissioners or as a member of any other county board or agency." The County Attorney tells us that members of the planning commission other than the *ex officio*

member receive compensation of $75 per meeting. The *ex officio* County Commissioner member receives no additional compensation for service as a member of the planning commissioner. *See* County Code § 2-2-18(a)(1).

## C. The BOCC's Appointment of Mr. Young to the Planning Commission

Mr. Young served as the President of the BOCC from December 2010 until the Frederick County Charter took effect on December 1, 2014. On that date, the BOCC ceased to exist. Frederick County Charter §§ 802, 808. During his term of office, the BOCC appointed Mr. Young to the planning commission as the Board's *ex officio* member, as permitted by LU § 2-102(a)(2) and § 2.3 of the planning commission rules. Mr. Young was an unsuccessful candidate for County Executive in the November 2014 election.

On November 24, 2014, the BOCC convened its last scheduled public meeting before its dissolution. After the conclusion of the items specified on the agenda, Mr. Young announced his immediate resignation from the planning commission as its *ex officio* member and read to the other Commissioners a letter of resignation to that effect. Commissioner Smith moved to accept Mr. Young's resignation and to appoint Mr. Young to fill a new five-year term as a "citizen" member of the planning commission effective November 30, 2014. The motion was seconded by Commissioner Shreve. During the debate that followed, Commissioner Gray expressed surprise at the motion, which he ultimately opposed, and the County Executive-Elect stated that the appointment of Mr. Young to a new five-year term usurped the County Executive's appointment power. The motion was adopted by a 3-1 vote, with Commissioner Gray voting against. At some point in the proceedings, Mr. Young passed the gavel to Commissioner Smith and did not vote on the motion.

The planning commission regularly meets on the second Wednesday of each month but it may also hold additional meetings as needed. The planning commission did not, however, meet on November 30—the day on which Mr. Young purportedly served as both County Commissioner and member of the planning commission—and Mr. Young received no compensation for his services as a member of the planning commission for that day. County Attorney Opinion at 2.

## II

## Analysis

*Hetrich v. County Commissioners of Anne Arundel County*, 222 Md. 304 (1960), provides the analytical framework for answering the questions you pose. There, the Court of Appeals held that a county commissioner was ineligible for appointment by the commissioners to the office of county business manager. In reaching that holding, the Court described Article 35's prohibition on holding two "offices of profit," the "incompatible positions" doctrine, and the ramifications of holding two such positions simultaneously. The Court also clarified that, where an officer is appointed to a second position for which he is *ineligible*, the appointment is "ineffective," *id.* at 312, and a "nullity." *Id.* at 309.

The ineligibility that makes an appointment to a second office a "nullity" can be based on a constitutional, statutory, or common law prohibition. *Id.* In *Kimble v. Bender*, for example, the basis for the ineligibility was constitutional: Art. III, § 17 of the Maryland Constitution prohibited a legislator from being appointed to an office that was created by statute during his term in the Legislature. 173 Md. 608, 612, 621-22 (1938). Here, the circumstances implicate a common law prohibition: the rule that "a member of an appointing board is ineligible for appointment by the board even though the member's vote is not essential to a majority in favor of an appointment." 67 C.J.S. Officers § 31, at 208 (2012); *see also*, *e.g.*, 63C Am.Jur.2d Public Officers and Employees § 93, at 563-64 (2009). This rule is based on the rationale that "the appointing board cannot absolve itself of ulterior motives if it appoints one of its own, whether or not his vote was necessary to the appointment, since the opportunity improperly to influence the other members of the board is there." *Hetrich*, 222 Md. at 309-10.

In *Hetrich*, the Court of Appeals stated, and then applied, the common law rule that "a member of an appointing body is ineligible for appointment to a conflicting office by that body, even though his own vote is not essential to the appointment."[5]

---

[5] As we have previously explained, this passage in *Hetrich* could be read to require that, in order for the rule of ineligibility to apply, the two offices at issue must be "conflicting" offices. 76 *Opinions of the Attorney General* 142, 144 n.1 (1991). We doubt that the Court of

*Hetrich*, 222 Md. at 309-12. It therefore held that the appointment of a county commissioner by the board of county commissioners to serve as acting county business manager was "ineffective." *Id.* at 312. The same rule would ordinarily apply here to prohibit the County Commissioners from appointing one of their own members to the planning commission.

However, as with common law rules generally, the rule of ineligibility applied in *Hetrich* may be altered by legislation, *see* 76 *Opinions of the Attorney General* at 145 n.3, and the General Assembly has done so in § 2-102 of the Land Use Article. Section 2-102 states that "[o]ne member of the planning commission may be a member of the legislative body, who serves as an ex officio member concurrent with the member's legislative term." LU § 2-102(a)(2). Pursuant to this provision, the Board had the authority to appoint one of its own members to serve on the planning commission, but that member was only allowed to serve *ex officio*,[6] with his term on the commission coinciding with his legislative term.

---

Appeals meant that; "[n]either the rationale offered for the common law rule of ineligibility in *Hetrich*, nor in caselaw generally, appears to limit the rule to appointments to 'conflicting' positions." *Id.* (internal citations omitted). But even if the rule were so limited, the positions in question here are "conflicting." The County Commissioners had the power to appoint members of the planning commission, remove them for cause, and set their compensation. *See* County Attorney Opinion at 5; *see also Hetrich*, 222 Md. at 308 ("The fundamental test of incompatibility at common law is whether there is a present or prospective conflict of interest, as where one office is subordinate to the other or subject to supervision by the other, or where the incumbent of one office has the power to appoint or remove or to set the salary of the other.").

[6] Our office has "wrestled with the interaction of dual office prohibitions and [§ 2-102's] authorization of 'ex officio' service on a planning commission by members of a county or municipal corporation's legislative body." Letter of Advice from Robert A. Zarnoch, Assistant Attorney General, to Del. Richard A. Sossi at 3 (Nov. 16, 2005). To some extent, the term "ex officio" is a misnomer in this context; "[t]rue 'ex officio' service arises solely and automatically by virtue of a person's holding of a particular office, not by the mechanism of a discretionary appointment." *Id.*; *see also* 61 *Opinions of the Attorney General* 152, 163 (1976) ("[T]he ex-officio position must arise directly from holding the first office."). We need not decide here if the County Commissioner serves on the planning commission in a "true" *ex officio* capacity to conclude that LU § 2-102

Because the Land Use Article is a grant of authority, and a very specific one, the authority provided in § 2-102 acts as a mandatory limitation, and prohibits the county commissioners from exercising their appointing authority in any other manner. *See Office & Professional Employees Intl. Union v. Mass Transit Admin.*, 295 Md. 88, 96 (1982) (stating that, "where a statute authorizes or permits a person or agency to take a certain type of action in a particular manner, such manner becomes a mandatory limitation, and the action must be taken in conformity with it"); *see also Mossburg v. Montgomery County*, 329 Md. 494, 505 (1993) (applying the principle to a State zoning enabling provision). And because LU § 2-102 was enacted in derogation of the common law rule against a body appointing one of its own members, it must be construed narrowly. *See Walzer v. Osborne*, 395 Md. 563, 573-74 (2006). As the Court of Appeals declared in *Gleaton v. State*, "it is not to be presumed that the legislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." 235 Md. 271, 277 (1964) (quoted in *Walzer*, 395 Md. at 573-74); *see also Witte v. Azarian*, 369 Md. 518, 533 (2002) (requiring "clear legislative intent" to alter the common law). Here, the clear, specific, and plain terms of the statute do not authorize the BOCC to appoint one of its own members to anything other than a single *ex officio* spot on the planning commission. Accordingly, we conclude that the Board did not have the authority to appoint one of its own as a "citizen" member of the planning commission with a term that exceeds his legislative term. Under *Hetrich*, then, the appointment of Mr. Young was ineffective.[7]

---

must be viewed as a statute in derogation of common law. *See* Letter of Advice from Robert A. Zarnoch, Assistant Attorney General, to Sen. James C. Simpson and Del. John W. Quade, Jr. at 4 (March 22, 1979) (concluding that § 3.02 of former Art. 66B—the predecessor to LU § 2-102—abrogated the common law "incompatible positions" doctrine).

[7] We recently addressed the relative roles of a planning commission and the local governing body. *See* 99 *Opinions of the Attorney General* 152 (2014). The statutory scheme does not suggest that the governing body may effectively assume the planning commission's role by appointing multiple members of the governing body to the planning commission as "citizen" members. *See id.* at 153-56 (describing functions assigned to each body). Also in that Opinion, we traced the legislative history of Maryland's planning authorities from their origins in the 1928 Standard City Planning Enabling Act to

We agree with the County Attorney that the positions of County Commissioner and member of the planning commission are "offices of profit" and "incompatible positions," but because the Board's attempted appointment of Mr. Young was void from the outset, his occupation of the planning commission position was only "illusory." *See Hetrich*, 222 Md. at 308. As a result, Mr. Young never actually held either a "second office of profit within the meaning of Art. 35 of the Declaration of Rights, or an incompatible office under the common-law rule." *Id.* at 312. There is thus no need for us to determine under the "office of profit" and incompatible position doctrines whether Mr. Young resigned his first office by accepting the second. *Id.* His purported appointment to the second was void in the first place, and he simply remained in his position as County Commissioner as if the appointment had never happened.[8] *See id.*

## III

### Conclusion

Maryland common law generally prohibits a body from appointing one of its own members to a position on another body.

---

their recodification in the current Land Use Article. *Id.* at 161-67. Throughout that history, every version of what is now LU § 2-102 has provided that the local legislative body may appoint *one* of its members to the planning commission, with that one member serving *ex officio* and for a term that corresponds to the tenure of his elective office. *See* 1933 Md. Laws, ch. 599 (codified at Md. Ann. Code, art. 66B, § 3); Md. Ann. Code art. 66B, § 12 (1935 Supp., 1957, 1967 Repl. Vol.); Md. Ann. Code art. 66B, § 3.02 (1970 Repl. Vol., 2003 Repl. Vol.). As described in the 1928 model planning act, the purpose of having the local legislative body represented on the planning commission was so that it could be "kept in touch with what the . . . planning commission is doing." U.S. Dep't of Comm., The Advisory Committee on City Planning and Zoning, "A Standard City Planning Enabling Act" at 10 n.15 (1928). "This can best be accomplished," the committee stated, by authorizing the legislative body to select "one of its own members" to serve on the commission, *id.*, in an "ex officio" capacity and with a term that corresponds to the member's "official tenure[]." *Id*. at 10-11.

[8]   Although we conclude that the Board did not have the authority to appoint Mr. Young as a "citizen" member of the planning commission, it did have the authority to appoint him—or, to be accurate, *re*-appoint him—as the Board's *ex officio* member of the commission. As LU § 2-102 plainly provides, however, Mr. Young's term as an *ex officio* member expired when his term as county commissioner ended on December 1.

Although LU § 2-102 provides an exception to the common law for *ex officio* appointments, that exception, construed narrowly, did not authorize the Board of County Commissioners to appoint one of its own members as a non-*ex officio* member of the planning commission. Mr. Young's appointment as a "citizen" member of the planning commission was thus ineffective.

Douglas F. Gansler
Attorney General of Maryland

Adam D. Snyder
Chief Counsel, Opinions & Advice