**Gen. 23]** **23**

## PUBLIC OFFICERS AND EMPLOYEES

### INCOMPATIBILITY OF OFFICES – COUNTY COMMISSIONER AND PUBLIC SCHOOL EMPLOYEE

July 25, 2016

*Rochelle S. Eisenberg*
*Pessin Katz Law*, P.A.

On behalf of the Board of Education of Carroll County ("school board"), you have asked for our opinion on two questions that have arisen out of the election of Dennis E. Frazier, a public school employee, to the Board of County Commissioners of Carroll County. Your first question is whether "a county commissioner, who is also a public school employee, may vote on matters impacting the local board of education," particularly school funding matters. This question does not raise an issue of State law. Instead, county law—specifically, Carroll County's ethics ordinance—controls County officials' duties to avoid conflicts of interest. It is our policy not to construe local laws in our opinions, and therefore we offer no opinion on that issue.

Your second question, which does raise State law issues, is whether there is an "incompatibility of office" between the positions of county commissioner and school board employee under the common-law doctrine that precludes a person from serving in public positions that are incompatible with each other. You have provided us with your opinion that the two positions are not incompatible under the common law. We agree that the positions of commissioner and public school teacher are ordinarily not incompatible, but in Carroll County the inquiry is complicated by the fact that the commissioners also serve as *ex officio*, nonvoting, members of the school board. *See* Md. Code Ann., Educ. ("Educ.") § 3-401(a)(3). That circumstance requires an analysis of whether Mr. Frazier's status as an *ex officio* member of the school board is incompatible with his service as a public school teacher. Although that is a closer question, we conclude that the positions of *ex officio* member of the school board and employment by the school board as a teacher are also not incompatible.

# I

# Background

As we have previously observed, the county boards of education "are granted broad authority to control all educational matters that affect the counties." 75 *Opinions of the Attorney General* 172, 179 (1990); *see also* Educ. § 4-101(a) (providing that, subject to certain provisions specific to Prince George's County, "educational matters that affect the counties shall be under the control of a county board of education in each county").[1] The local boards' powers and duties include, among other things, the power to appoint and set the salaries of school employees, § 4-103, determine the educational policies of the county school system, § 4-108(3), and prepare an annual budget, § 5-101. Although the statutory provisions that set forth these powers and duties apply equally to all county boards, each board is subject to county-specific statutory provisions that govern its make-up. Some boards are appointed; they are filled according to the provisions in Part II of Title 3, Subtitle 1 of the Education Article. *See* § 3-108. Others, including the Carroll County board, are elected; they are filled according to the provisions in Part III of Subtitle 1. *See* § 3-114.

Although the Carroll County school board is characterized as an elected board, Educ. § 3-114(a)(3), not all of its members are elected. The five *voting* members are elected to the board, § 3-401(c), as is the nonvoting student representative, who is elected by the high school students of the county. § 3-401(f). But the board also includes all of the county commissioners, who are not elected to the board, but instead serve as nonvoting, *ex officio* members.[2] § 3-401(a)(3).

Mr. Frazier was elected to the Board of County Commissioners in 2014 and began his term of office on December

---

[1] Unless otherwise indicated, all statutory references are to the Education Article, 2014 Replacement Volume and 2015 Supplement.

[2] In this opinion, we use the term "*ex officio*" to refer to a member who holds his position by virtue of holding another office. *See* 61 *Opinions of the Attorney General* 152, 163 (1976) (stating that "the ex-officio position must arise directly from holding the first office"); *see also* 99 *Opinions of the Attorney General* 242, 248 n.6 (2014) (discussing different uses of the term). Until July 1, 2014, the local boards in Allegany County and Garrett County also had a county commissioner-member who served *ex officio*. *See* 2014 Md. Laws, ch. 295. To our knowledge, the Carroll County board is the only board on which *all* of the county commissioners serve *ex officio*.

3, 2014.  At the time he was elected, Mr. Frazier was a teacher within the Carroll County Public School System.  It is our understanding that Mr. Frazier continues to hold that position today.  The questions you raise relate to whether Mr. Frazier's employment as a public school teacher is incompatible with his service as a county commissioner or as an *ex officio* member of the Carroll County school board.

## II

## Analysis

### A.    *Whether Mr. Frazier's Teaching Position in the Carroll County School System Is Incompatible with His Service as a County Commissioner*

You provided your opinion that Mr. Frazier's employment by the school board is not incompatible with the office of county commissioner.  Your opinion is based in part on a letter of advice from the Office of Counsel to the General Assembly on the question of whether a teacher or administrator employed by a school board could run for the office of county commissioner.  *See* Letter from Kathryn M. Rowe, Assistant Attorney General, to Hon. George C. Edwards (Nov. 1, 2013).  We agree with Ms. Rowe's explanation of the applicable principles and agree with your conclusion that the two offices are not ordinarily incompatible.

The Court of Appeals has summarized the common-law test of incompatibility as follows:

> The fundamental test of incompatibility at common law is whether there is a present or prospective conflict of interest, as where one office is subordinate to the other or subject to supervision by the other, or where the incumbent of one office has the power to appoint or remove or to set the salary of the other.

*Hetrich v. County Comm'rs of Anne Arundel County*, 222 Md. 304, 308 (1960); *see also Lilly v. Jones*, 158 Md. 260, 266 (1930).  In Maryland, the doctrine applies both to public employees and to public office-holders and requires a fact-specific inquiry.  *Howard County Metro. Comm'n v. Westphal*, 232 Md. 334, 342-43 (1963); *see also* 85 *Opinions of the Attorney General* 218, 220-21 (2000) (summarizing the common law).  Ordinarily, an incumbent of a

public position who accepts a second public position that is incompatible with the first is deemed to have chosen the second position and vacated the first. *Hetrich*, 222 Md. at 308.

As you have pointed out, Mr. Frazier's teaching position does not conflict with the office of commissioner by virtue of subordination to, or supervision by, that office; county governing bodies lack the power to appoint, remove, or supervise school board employees. And while the county commissioners ultimately approve the local school system's budget and fund it in part, the county commissioners do not set individual teacher salaries. Mr. Frazier's two positions thus do not fall under the *Hetrich* court's example of a conflict that would create an incompatibility. Addressing a similar issue, the Attorney General of Kansas concluded that the incompatibility doctrine did not bar a local school board employee from serving on the state board of education because the state board did not supervise the employee and did not set either the employee's salary or the employee's duties. Kan. Att'y Gen. Op. No. 2007-43; 2007 WL 4466583,*3 (Dec. 17, 2007).[3]

That leaves the question of whether another type of conflict makes the positions incompatible under *Hetrich*, as might be the case if Mr. Frazier's employment by the school board entailed the preparation of the school board's budget. *See Irvington Mun. Council v. Steele*, 95 N.J.A.R.2d (EDU) 123; 1994 WL 975083, *16 (N.J. Adm. Dec. 19, 1994) (finding "a clear conflict for a school business administrator who develops the budget for the school district to review that same budget in his capacity as mayor and chair of the [town's] Board of School Estimate"). Here, it does not appear that Mr. Frazier's position as a teacher involves him in the school board's preparation of its budget or any other school funding matters, and no other type of conflict has been brought to our attention. Based on our understanding of Mr. Frazier's responsibilities as a public school teacher, we agree that his teaching position is not incompatible with his service as a county commissioner.

Our conclusion on this point, of course, does not fulfill your request for guidance on whether Mr. Frazier is barred from voting

---

[3] Although the Kansas Attorney General's opinion is helpful in analyzing common law incompatibility, the conclusion it reaches would likely be foreclosed by Maryland statutory law, which prohibits an "individual who is subject to the authority of the [State] Board" from being appointed to the Board. *See* § 2-203(b)(3)(i).

on matters affecting a local board of education. The incompatibility doctrine addresses whether someone may hold both positions, not whether someone who properly does so has the duty under ethics laws to recuse himself from some matters. As might be the case with any commissioner, a topic that comes before the commissioners could conceivably be so specific as to affect Mr. Frazier's personal interests and thereby raise questions under the county's ethics ordinance.

In 1987, the Attorney General of North Carolina reached the same conclusion when asked whether a school principal, serving also as a county commissioner with funding power over the school system, occupied incompatible offices. *See* 57 N.C. Op. Att'y Gen. 33; 1987 WL 269244, *2 (1987). The Attorney General explained that he was "not prepared to declare [the positions] incompatible" under the common law, but cautioned that "a school employee serving on a board of county commissioners having funding responsibility for his school system should constantly bear in mind that his duty is to vote the public's interest as he perceives it, not his own interests." *Id.* The Attorney General elaborated on the potential conflicts that might arise:

> Circumstances when the tension between the school employee's interests and the public's interest would be heightened include specific votes on the parts of a budget request providing salary supplements and specific votes on other parts of the budget requests directly relating to the employee. If a school employee determines that his personal interest predominates over, or might appear to predominate over, the public's interest in a given situation, the school employee should request to be excused from voting.

*Id.* Ultimately, however, whether a local official must recuse himself from a matter is governed by local ethics laws, which, in accordance with our longstanding policy, we do not construe.[4] *See*, *e.g.*, 88 *Opinions of the Attorney General* 145, 150 (2003).

---

[4] The interpretation of the county's ethics ordinance lies with the Carroll County Ethics Commission. Under that ordinance, the County Ethics Administrator is to respond within 30 days to requests for advisory opinions on the application of the ethics rules, and "[i]f the

**B.** *Whether Mr. Frazier's Teaching Position Is Incompatible with His* **Ex Officio** *Status as a Nonvoting School Board Member*

Our conclusion that Mr. Frazier's employment as a public school teacher is not incompatible with his service as a county commissioner does not end the inquiry. Because all of the Carroll County Commissioners are also nonvoting *ex officio* members of the local school board, § 3-401(a)(3), we must also address whether Mr. Frazier's *ex officio* position on the board is incompatible with his job as a teacher. Two circumstances complicate that analysis. First, § 3-114(f) of the Education Article could be read to make the positions statutorily incompatible. Second, as to the common law doctrine of incompatibility, there is little or no Maryland precedent on the duties and loyalties of *ex officio* members of boards. Because the General Assembly may enact legislation altering the common law of incompatibility, *see* 85 *Opinions of the Attorney General* at 224, we will start by addressing statutory incompatibility.

### 1. Statutory Incompatibility

Two provisions of the Education Article address the question of when an individual is prohibited from serving on a county board of education. Section 3-108(b)(2) applies to appointed school boards; it provides that "[a]n individual who is subject to the authority of the county board may not be appointed to or serve on the county board." That provision does not apply here because the Carroll County board is an elected board. Section 3-114(f) applies to elected school boards:

> An individual subject to the authority of the county board may not serve as a member of the county board. At the time of filing a certificate of candidacy for election to a county board, a person shall certify to the local board of supervisors of elections whether or not the person is subject to the authority of the county board. The Governor

---

Ethics Administrator is unable to respond within 30 days, then the County Attorney will respond, or in the absence of the County Attorney, the Ethics Commission will respond." Carroll County Code of Ordinances § 34.06(B). Further, under § 34.04, "[i]n the event that the County Attorney is unable to provide legal advice due to a conflict or a perceived conflict, the Ethics Commission may request through the County Attorney outside counsel . . . ."

> may not issue a commission of election to a person who has certified affirmatively and who is elected to a county board until the member-elect offers proof that the member-elect is no longer subject to the authority of the county board.

Taken out of context, the first sentence of § 3-114(f) would seem to prevent a public school teacher from serving on an elected local board; it plainly prohibits anyone who is subject to a school board's authority from serving as a school board member in any capacity. However, statutes must be read in context. Even when the meaning of a provision seems plain, it is to be read not by reference to "the isolated section alone," but rather "within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Employees' Ret. Sys. of City of Baltimore v. Dorsey*, 430 Md. 100, 113 (2013) (quoting cases); *see also Robey v. State*, 397 Md. 449, 454 (2007) (noting that a court "may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments").

The surrounding provisions in subsection (f) suggest strongly that the prohibition is directed to school board members who are elected *to that office*. The sentence immediately following the prohibition requires a person to disclose, "[a]t the time of filing a certificate of candidacy for election to a county board," whether the person is subject to the authority of the county board. If the person certifies that he is subject to the county board's authority, the Governor may not issue a "commission of election" to the "member-elect" until he offers proof that he is no longer subject to the authority of the county board. Subsection (g) similarly provides that the "election of the county boards shall be held" as provided in Subtitles 2 through 14 of this title [*i.e.*, the county-specific provisions for elected boards] and the Election Law Article." Educ. § 3-114(g). In addition, the statute itself appears in that Part of Title 3, Subtitle 1 dealing with elected boards, suggesting that only those members elected to the boards were the object of legislative concern in § 3-114. As a whole, then, the "thrust of the entire statute," *Robey*, 397 Md. at 455, is directed at the eligibility of candidates for the elected positions on school boards and not at members placed on those boards by other means.

The legislative history confirms that § 3-114 applies only to candidates for election to a school board and the elected members.

Carroll County's board became an elected board in 1974. *See* 1973 Md. Laws, ch. 599 (adding a new § 35B to the "Public Education" title of what was then Article 77). In the subsection that specified the mode of nomination of school board candidates, the new statute provided: "No person subject to the authority of the Board of Education of Carroll County may be certified as a *candidate*." Art. 77 § 35B(b)(2) (emphasis added). Later, after Article 77 had been recodified into the Education Article, the General Assembly amended the law governing the election of school board members for purposes that included "specifying that the nomination and election of [school board candidates] conform to the . . . Election Code." 1982 Md. Laws, ch. 338. A summary in the bill file for that legislation indicates that the specific purpose of the amendments was to ensure that elections to local school boards were governed by the same election code provisions that govern how other "elected officials are elected." *See* "House Bill 281" (summarizing legislation), Bill file on H.B. 281, 1982 Leg., Reg. Sess. (1982); *see also Patton v. Wells Fargo*, 437 Md. 83, 99-100 (2014) (relying on similar documents found in a bill file). Indeed, the current Election Law Article provisions applicable to the election of school board members requires the election board to "determine whether the candidate qualifies as provided under Title 3 of the Education Article and Title 5 of this [Election Law] article." Md. Code Ann., Election Law ("EL") § 8-803(a). The focus of all of these legislative enactments is on how members of local school boards are elected to their position, not on those members who sit on the board in an *ex officio* capacity.

Finally, since 1982, the General Assembly has provided for most elected boards an appointed, often nonvoting, student member. *See*, *e.g.*, Educ. § 3-201(b)(2). We see no indication that the General Assembly intended to render the various boards' student members—who are obviously "subject to the authority of the county board"—ineligible for the positions assigned to them in the county-specific provisions. Instead, the legislative history confirms what the statutory context already suggests: the first sentence of what is now § 3-114(f) applies to candidates for, and elected members of, elected school boards and not to other members, such as appointed, student, and *ex officio* members. We therefore conclude that § 3-114(f) of the Education Article applies only to the elected members of the school board.

### 2. Common-Law Incompatibility, as Applicable to *Ex Officio* Positions

Our conclusion that § 3-114(f) does not apply to the non-elected *ex officio* board members means that the positions of *ex*

*officio* board member and teacher are only incompatible if they are incompatible under the common law. As an initial matter, we think that service as a public school employee and as a *voting* member of the school board would likely be incompatible. Although no Maryland appellate decisions have addressed the issue, courts in other states have routinely found service as a school board employee to be incompatible with service as a voting member of the school board. *See*, *e.g.*, *Unified Sch. Dist. No. 501*, *Shawnee County*, *Kan. v. Baker*, 269 Kan. 239, 250-52 (2000) (holding that the positions of schoolteacher and voting school board member were incompatible under the common-law rule); *Thomas v. Dremmel*, 868 P.2d 263 (Wyo. 1994) (same, as to school board maintenance employee); *see also* Allan E. Korpela, *Annotation*, *Right of Schoolteacher to Serve as Member of School Board in School District Where Employed*, 70 A.L.R. 3d 1188 (1976 & Cum. Supp.).

Mr. Frazier, however, is not a voting member of the school board. The fact that the *ex officio* board member does not have a vote would at least lessen the conflict of interest that would exist if a public school teacher served as a voting member of the school board. The nonvoting member might still be able to influence the board by making his views known during the board's deliberations,[5] but he would not be able to directly affect, by voting, how the board acts with respect to matters of interest to public school teachers.

At the same time, authorities from other jurisdictions suggest that an incompatibility between offices does not evaporate simply because the member does not vote. For example, the Supreme Court of Wyoming has held that the incompatibility between a position on the school board and employment as a teacher within the district would not be cured by a member "absent[ing] himself from the discussion and voting on his own contract." *Haskins v. State ex rel. Harrington*, 516 P.2d 1171, 1179 (Wyo. 1973). The court reasoned that "the need of the community for continuing exercise of judgment and the making of decisions on the basis of give-and-take discussion of independent minds is not served best where one of the board must at frequent intervals take no part because of conflict." *Id.*; *see also* 70 A.L.R. 3d 1188, at § 2

---

[5] *See* 100 *Opinions of the Attorney General* 55, 77-78 (2015) (under the liberal construction given the State Public Ethics Law, member of district council "participates" in the "consideration" of matters by being present during their discussion).

(observing that most courts "apparently tak[e] the position that the voters are entitled to school board members who are free to vote on all matters and that the mere possibility of conflict is sufficient to create an incompatibility between the two positions"). And the Louisiana Attorney General concluded that a physician may not serve on a hospital district board with authority over the physician's hospital, even if he served entirely in a non-voting capacity. La. Atty. Gen. Op. No. 91-117 (1991).

However, none of these out-of-state authorities involved *ex officio* membership on a school board, where the potential incompatibility arises only because a statutory provision places the member there. And those out-of-state authorities that do address *ex officio* status, but do not involve school board membership, provide conflicting guidance. For example, the Iowa Attorney General concluded in 1906 that, while the law in this area was "not clearly defined," it was "extremely doubtful" that the mayor of a city could serve on the state board of health when the mayor also served *ex officio* as a member of the local board of health, which was under the direction of the state board. *See* Iowa Atty. Gen. Op., 1906 WL 52871 (Feb. 27, 1906). More recently, by contrast, the Supreme Court of Hawaii has suggested that the common law rule prohibiting a person from holding incompatible offices "is inapplicable when a person is compelled by law to accept the second position." *State v. Villeza*, 85 Haw. 258, 270 (1997). When the incompatibility is thrust upon the office-holder by operation of law, "neither the design nor the spirit of" the common law prohibitions is served by disqualification.[6] *Id.* (quoting 63A Am. Jur. 2d Public Officers and Employees § 83 (1984)); *see also* M.C. Dransfield, *Annotation*, *Effect of Election to or Acceptance of One Office by Incumbent of Another Where Both Cannot Be Held by Same Person*, 100 A.L.R. 1162 (1936 & Cum. Supp.).

As for Maryland law, there is very little guidance available on whether an incompatibility of an official's outside employment with a nonvoting *ex officio* position would make the person ineligible for the principal office to which the *ex officio* position is attached. On the one hand, it could be argued that, had the General Assembly wished to disqualify all school board employees from service on Carroll County's board of commissioners, the General Assembly would have expressed that intent. It did not; although the Election Law Article makes clear that the candidacy of school

---

[6] The circumstances of the Hawaii case are somewhat different from ours; the potentially conflicting duties there were imposed on the office-holder only *after* the official had taken office. *Villeza*, 85 Haw. at 270.

board members is subject to the Education Article, *see* EL § 8-801, neither the Election Law Article nor the Local Government Article contains an analogous provision on the candidacy of county commissioners. Further, Maryland law expressly protects the right of public servants, including school board employees, to run for political office. *See* Md. Code Ann., State Pers. & Pens. § 2-304(a) (2015 Repl. Vol.) (providing that a state employee "may freely participate in any political activity"); 85 *Opinions of the Attorney General* at 218 ("State law guarantees State and local government employees the right to run for public office.").

On the other hand, this office has consistently opined that the right to run for office does not include the right to serve in an incompatible position once elected. *See*, *e.g.*, 85 *Opinions of the Attorney General* 177, 180-81 (2000). And the fact that the Election Law Article and other laws pertaining to elected officials do not enumerate each public position with which an elective office might be incompatible means only that common-law incompatibility principles apply.

In sum, there is no clear answer to the question of whether an incompatibility between outside (but public) employment and an *ex officio* position would preclude a person from serving in the office to which the *ex officio* position is attached. What does seem clear, however, is that an *ex officio* membership on the school board is not considered to be a separate position in the first place. It has long been the view of this office that a membership made *ex officio* by virtue of a principal office "does not constitute the holding of separate offices but rather is the appending of additional duties upon the first office." 61 *Opinions of the Attorney General* at 162 (addressing whether an *ex officio* membership was a separate position for purposes of the constitutional bar on holding two offices of profit); 60 *Opinions of the Attorney General* 121, 129 (1975) (*ex officio* service "is not the holding of a separate office"); *see also*, *e.g.*, *Hancock v. Davidson County*, 104 S.W.2d 824, 828 (Tenn. 1937) (explaining that "it is almost everywhere a settled rule that a statute conferring additional duties on a public officer *ex officio* does not have the effect of appointing him to a second office").

From these principles, we conclude that the commissioners' primary duty lies with the office of commissioner and that their *ex officio*, nonvoting, membership on the school board does not create a separate office with separate duties. The interplay between the two positions does not involve the type of structural conflict of

loyalties that the incompatibility doctrine is designed to prevent. *See Hetrich*, 222 Md. at 308. As applied here, that means that Mr. Frazier's duties lie with the principal office, that of county commissioner. Because his teaching position is not incompatible with that of commissioner, there is no incompatibility of office. So, while ethical questions may arise from time to time in particular circumstances, as would be the case for any commissioner when an issue arises that might affect the commissioner's personal interests, the positions of school board employee and commissioner are not rendered incompatible by the provision in the Education Article that confers *ex officio*, non-voting school board membership on the commissioners. We found no indication of a broad legislative intent to bar the employees of the Carroll County School Board from serving as Carroll County commissioners.

### III

### Conclusion

The office of county commissioner, which includes the function of serving *ex officio* on the school board, is not incompatible with employment by the school board as a teacher. This conclusion does not address Mr. Frazier's duties under the ethics provisions applicable to his positions.

> Brian E. Frosh
> Attorney General of Maryland
>
> Adam D. Snyder
> Chief Counsel, Opinions & Advice

\* Ann MacNeille, Assistant Attorney General, contributed significantly to the preparation of this opinion.